UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

VLADIMIR GRIGOUS,                          :
                                           :
                    Petitioner,            :        CIVIL NO.  3:02CV1440(CFD)
                                           :
        v.                                 :
                                           :
JOHN ASHCROFT, ATTORNEY                    :
GENERAL, UNITED STATES OF                  :
AMERICA,                                   :
                                           :
                    Respondent.            :        OCTOBER 25, 2002


## MEMORANDUM IN OPPOSITION TO PETITION FOR HABEAS CORPUS

Pursuant to this Court's Order dated August 20, 2002, the Attorney General hereby

respectfully submits this response to Petitioner's Petition For Habeas Corpus And Stay of

Removal (document no. 1) dated August 19, 2002. On August 26, 1998, Petitioner, who is from

the Ukraine, was ordered removed from the United States by an Immigration and Naturalization

Service ("INS") Immigration Judge ("IJ") when he failed to appear for a hearing on his claim of

asylum.

In this case, subject matter jurisdiction is lacking and the petition should be dismissed.  If

the Court disagrees and decides that exercise of habeas jurisdiction is allowed despite the

authority cited herein, then the Respondent respectfully requests that a conflicts waiver hearing

be held before further addressing the claims in the petition.

### BACKGROUND

Claim for Asylum. Petitioner was born on April 21, 1957, in the former Soviet Union, in

what is currently the Ukraine.  On September 3, 1990, Petitioner and his wife arrived in the

United States on a tourist visa. According to notes in the INS file, his two children remained behind in Ukraine and his wife later returned to Ukraine. Petitioner overstayed his visa, and on January 20, 1993 he filed a Request for Asylum. He claimed entitlement to asylum because he had been persecuted for being a Ukrainian Catholic and later opposed repopulation of the Chernobyl disaster area, subjecting him to being beaten and demoted.[1]

Hearing Before Immigration Judge. On June 12, 1997, the application for asylum was not granted by INS and automatically referred to an IJ for a hearing on further review. The IJ hearing was scheduled for August 26, 1998 (Exhibit 4, Notice of Hearing, June 8, 1998), having been re-scheduled at Petitioner's attorney's request due to the attorney's vacation plans. (Exhibit 5, Motion of Michael G. Moore.) According to the Certificate of Service, the Notice of Hearing was dispatched to Attorney Moore's Springfield address by mail. There is no indication or claim that Petitioner did not receive notice of this hearing.

On August 26, 1998, the IJ convened the hearing in Boston, Massachusetts. Neither Petitioner nor his counsel attended. Pursuant to his statutory authority, the IJ deemed Petitioner's request for asylum abandoned and issued an Order of Removal in absentia. (Exhibit 6.)

On September 6, 1998, Petitioner, through counsel, moved to reopen the proceedings. The motion stated that counsel was in attendance in a different immigration court on that date. It

---

[1]     Petitioner's claim is based on "grave mistreatment and suffering at the hands of the Soviet system," a government no longer in existence. See Petitioner's Affidavit dated Jan. 29, 1993, ¶ 2 (Exhibit 1). See also Request for Asylum (Exhibit 2). Respondent notes that when these claims were reviewed by the INS Officer, Petitioner was deemed not credible. Referral Notice at 3 and attached Assessment/Referral Memo at 1-2 (Exhibit 3). Petitioner acknowledged that he and his family practiced their faith without interference in Soviet Ukraine; that he never lost any salary for refusing to work in Chernobyl; and that he abandoned that line of work and started a taxi business the year before departing Ukraine. He refused to address the question whether he had a fear of returning to Ukraine, only that he has started a business in the United States and would not be able to build a life in Ukraine. Assessment/Referral Memo (Exhibit 3) at 1-2.

- 2 -

also pointed out a minor error in the removal order (which was subsequently fixed by amending

the removal order). The entirety of the motion reads as follows:

> On August 26, 1998, the Complainant was ordered removed as neither he
> nor his counsel were present for the hearing.

> On that date, counsel for the alien was in Immigration Court in Hartford,
> Connecticut, representing **Carlton Whitehorn**, A# 35 973 284 so that he was
> unable to attend the hearing in Boston on the instant case.

> In addition, the respondent was ordered removed to the to the United
> Kingdom. Mr. Grigous, through counsel, states that he has never even visited the
> United Kingdom. As the I-862 alleges, Mr. Grigous is a citizen of the Ukraine. It
> does not mention presence or claim to return to the United Kingdom.

> For these reasons, Mr. Grigous respectfully asks this court to reopen this
> case.

(Exhibit 7.) The Petitioner did not and does not assert that he or his counsel did not have notice

of the hearing, only that they both should be excused after the fact from attending it.

By decision dated September 28, 1998, the Immigration Judge denied the motion to

reopen, stating that the Petitioner failed to present any cognizable ground for excusing either his

own or his counsel's failure to appear. (Exhibit 8.)

Appeal to Board of Immigration Appeals ("BIA").

On December 10, 1998, Petitioner appealed to the BIA. (Alien's Appeal Brief, Exhibit

9.) By decision dated May 14, 2002, a three-member panel of the BIA affirmed the IJ's decision

per curiam and without opinion. (Transmittal Letter and Decision of the Board of Immigration

Appeals, Exhibit 10.)

District Court Action

On August 19, 2002, Petitioner filed a Petition For Habeas Corpus and Stay of Removal,

along with a two-page memorandum in support (document nos. 1 & 2). On August 20, 2002, this court ordered INS to respond and to provide the Court 21 days' notice before deporting Petitioner (document no. 3).

## ARGUMENT

## I.    THERE IS NO HABEAS CORPUS JURISDICTION IN THIS COURT.

According to both INS records and the Petition, Petitioner is at liberty and resides in West Granby, Connecticut. Petition at 1. He is a "non-criminal alien," that is, he is a non-citizen subject to removal for a reason other than criminal conviction. See Liu v. INS, 293 F.3d 36, 37 n.1 (2d Cir. 2002). He is not, nor has he ever been, in INS or federal custody. As far as INS is aware, he is not in the custody of state or local authorities. There has been no detainer issued. Even though the BIA decision of May 22, 2002, rendered the 1998 Order of Removal final, there has been no enforcement action by INS in the five months elapsed. There are no travel arrangements for Petitioner's departure, nor has Petitioner been notified of any such arrangements.

Petitioner seeks a writ of habeas corpus from a final order of removal. A writ of habeas corpus serves as relief from unlawful custody or imprisonment. Deutsch v. United States, 943 F.Supp. 276, 278 (W.D.N.Y. 1996). However, in order for the court to have jurisdiction to issue a writ of habeas corpus, the petitioner must be in the custody of the authority against whom the relief is sought. Id.; See 28 U.S.C. § 2241(c); Dearmas v. Immigration and Naturalization Serv., NO. 92 Civ. 8615, 1993 WL 213031, at *2 (S.D.N.Y. 1993)(Attachment A); Severino v. Thornburgh, 778 F. Supp. 5, 6 (S.D.N.Y. 1991). Petitioner cannot meet this requirement because he is neither in federal nor INS custody.

- 4 -

District courts in this circuit have routinely held that even the filing of an INS detainer notice does not satisfy the in custody requirement for habeas jurisdiction. Dearmas, 1993 WL 213031, at * 3 (citing Severino v. Thornburgh, 778 F.Supp. 5, 7 (S.D.N.Y. 1991); Paulino v. Connery, 766 F.Supp. 209, 211-12 (S.D.N.Y. 1991); Garcia v. McClellan, 91 Civ. 3225 (RWS), 1991 WL 90755, at *1 (S.D.N.Y. 1991)(Attachment B); Fernandez-Collado v. Immigration and Naturalization Serv., 644 F.Supp. 741, 743-44 (D. Conn. 1986), aff'd mem., 857 F.2d 1461 (2d Cir. 1987); see also Castronova v. United States, 94-CV-606S, 1995 WL 604327 (W.D.N.Y. August 29, 1995)(Attachment C); Saywack v. Attorney General, 91 Civ. 7797 (PNL), 1993 WL 205121 (S.D.N.Y. June 9, 1993); Hechavarria-Castellano v. Immigration and Naturalization Serv., Civ. No. H-84-498 (JAC), 1985 WL 6439 (D. Conn. April 12, 1985)(Attachment D). A detainer provides "notice that future INS custody will be sought at the time of deportation." Andriianov v. Meisner, No. 97-CV-781, 1998 WL 106239, *3 (N.D.N.Y. Mar. 3, 1998)(Attachment E). INS has not issued a detainer, since Petitioner is not in the custody of state or local authorities. Nor has INS taken any enforcement action against Petitioner. At this time, therefore, this Court has no jurisdiction to issue a writ of habeas corpus to the Petitioner and this matter should be dismissed in its entirety.

## II.    IF, CONTRARY TO THE AUTHORITY SET FORTH ABOVE, THIS COURT DECIDES IT MAY EXAMINE THE PETITION, A CONFLICT WAIVER HEARING SHOULD BE HELD FIRST.

Although deportation proceedings are civil in nature and do not implicate the Sixth Amendment's right to effective assistance of counsel in criminal proceedings, the Second Circuit has recognized claims based on ineffective assistance of counsel in deportation proceedings

- 5 -

where it can be said that "counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994).

"To prevail on such a claim, the petitioner must make a two-part showing: 1) 'that competent counsel would have acted otherwise,' and 2) 'that he was prejudiced by his counsel's performance.'" Id. (quoting Esposito v. INS, 987 F.2d 108, 111 (2d Cir. 1993)). "In order for [the petitioner] to show that his attorney's failure . . . caused him actual prejudice, he must make a prima facie showing that he would have been eligible for the relief and that he could have made a strong showing in support of his application." Id. (i.e., failure to submit application for INA § 212(c) relief).

There is no claim of ineffective assistance of counsel in the Petition, nor was one raised in the underlying Motion to Reopen. The record is silent on whether Attorney Moore advised Petitioner of his rescheduled asylum hearing with the IJ. Even after the IJ noted that Petitioner's own failure to appear was material to the outcome, implicitly inviting him to offer the immigration court an explanation or excuse, no argument has been advanced on behalf of Mr. Grigous that his failure to appear should have been excused. The facts of this case suggest that a failure on the part of Attorney Moore may have been the cause of Petitioner's default on his claim of asylum.

Furthermore, Respondent notes that Petitioner failed to proceed, as was his right, with a Petition For Review directly with the Court of Appeals for the First Circuit. See 8 U.S.C. § 1252(b)(2). In a Petition For Review, Mr. Grigous could have been afforded review of the entire record of this proceeding. Instead, Attorney Moore has proceeded with the instant habeas

- 6 -

petition. Because a habeas proceeding is limited to "pure questions of law," it will not afford

Petitioner the opportunity to revisit the underlying issues of fact determined by the Immigration

Judge. Pickett v. Immigration and Naturalization Serv., 3:02CV622(JBA), 2002 WL 1359671 at

*7 (D. Conn. Jun. 19, 2002)(Attachment F).

As Petitioner has been represented throughout the relevant proceedings by Attorney

Moore and is still represented by Attorney Moore, it is appropriate to ascertain whether the

Petitioner knowingly waives any potential claim for ineffective assistance of counsel, whether

with regard to the basis for the Motion To Reopen, the form of judicial review sought, or any

other matter.

For these reasons, if the Court determines that it may exercise habeas jurisdiction despite

the absence of detention of the Petitioner, the Respondent requests a hearing in which the

Petitioner is fully informed by the Court of the potential conflict of interest presented by his

counsel and is questioned to determine whether he wishes to waive any possible claim of

ineffective assistance of counsel.[2]

---

[2]     If these proceedings continue, Respondent reserves the right to present any and all
arguments, as appropriate, including but not limited to (1) the scope of habeas review does not
permit the judicial review sought by Petitioner, Pickett v. Immigration and Naturalization Serv.,
3:02CV622(JBA), 2002 WL 1359671 at *7 (D. Conn. Jun. 19, 2002)(Attachment F); (2) the
governing statute compels the IJ to issue a removal order in absentia when an alien fails to appear
under the circumstances of this case, 8 U.S.C. § 1229a(5)(A); (3) the regulation cited by
Petitioner, 8 C.F.R. § 3.2, is not applicable to motions to reopen when the order of removal was
issued in absentia in this manner; (4) the IJ followed the correct standard for determining
motions to reopen directed at removal orders issued in absentia, 8 U.S.C. § 1229a(5)(A); and (5)
the BIA did not abuse its discretion when it affirmed the IJ's decision to deny the motion to
reopen, see Fuentes-Argueta v. Immigration and Naturalization Serv., 101 F3d 867, 870 (2d Cir.
1996). However, without knowing whether Petitioner has knowingly disclaimed any assertion of
ineffective assistance of counsel, the Respondent is not able to appropriately address these issues.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus should be

dismissed and the Court's order regarding prior notice to the Court of pending deportation should

be vacated.

Respectfully submitted,

JOHN A. DANAHER III
UNITED STATES ATTORNEY

CAROLYN A. IKARI
ASSISTANT UNITED STATES ATTORNEY
450 Main Street, Room 328
Hartford, Connecticut 06103
(860) 947-1101
Federal Bar No. ct13437

MATTHEW SKAHILL
LAW STUDENT INTERN
450 Main Street, Room 328
Hartford, Connecticut 06103
(860) 947-1101

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, first-class, postage prepaid,

on this 25th day of October, 2002, to:

Michael G. Moore
Law Offices of Maria De Castro Foden
107 Oak Street
Hartford, CT 06106

CAROLYN A. IKARI
ASSISTANT UNITED STATES ATTORNEY

- 8 -

# EXHIBIT 1

U.S. DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

```
------------------------------------------X
In The Matter Of                          :
GRIGOUS, Vladimir                         :
------------------------------------------X
```
                                                            A F F I D A V I T


        Vladimir Grigous of full age and duly sworn deposes and says:

        1. I am a citizen of Ukraine and I make this affidavit in support of my

application for asylum.

        2. Throughout my life, I experienced grave mistreatment and suffering at the

hands of the Soviet system.

        3. I am a Ukrainian Catholic.

        4. I was born on April 21, 1957 in the Ternopil region of western Ukraine.

My parents were devout Catholics and raised me strictly in the Catholic faith.

        5. I entered elementary school in 1964. Even at that young age I was forced

to learn the principles of atheism and I was officially forbidden from practicing my

religion.

        6. Catholic churches in Ukraine were forcibly closed. Persons who protested

and demonstrated were quickly turned over to the local militia which was simply an

arm of the regional KGB.

        7. Though I was still very young, the militia warned me not to attend church.

        8. In order to avoid covert conflict with devout Catholic families, schools

purposely organized special activities for children on holidays and KGB operatives

were strategically placed near the church gates in order to monitor those persons who were entering.

9. My family and I refused to be deterred by these tactics. My parents continued to encourage me to participate in religious activities.

10. Several times I was questioned as I attempted to enter church. Directly after such an interrogation I was summoned to a "special meeting" in school where a student trial was held. I had to endure public ridicule and I became the target of student obscenities and harassment.

11. I was threatened with expulsion from school and my grades were purposely lowered. I was forbidden to attend summer camps and I was blacklisted as a difficult and bad student.

12. When I attempted to go caroling during the Christmas season I was categorically forbidden to do so by the school administration.

13. Once I completed the 10th grade and I began my vocational studies, my problems began to intensify.

14. My parents were staunch nationalists who taught me that Ukrainians must uphold their national language and culture and that the Soviet regime was determined to destroy our people and our heritage.

15. The Ukrainian constitution proclaimed the national language to be Ukrainian, yet a policy of extreme russification was in effect all over Ukraine. This was most evident in the schools.

16. My text books were not in Ukrainian but in Russian. We were forbidden from speaking Ukrainian in school and all our school assignments had to be completed in Russian.

17. I began to voice protest. Without warning and without any opportunity to plead my case I was expelled from practical training and ordered into the Soviet army.

18. I suffered extreme hardship in the army. I was mistreated and ridiculed both for my religious beliefs and my nationalism.

19. In 1977 I was permitted to return to my studies. I then began working as an electrician and alarm systems and refrigeration specialist. It was during this time that the Chernobyl nuclear explosion occurred.

20. Because of my experience, I was mandated to participate in the reconstruction of the Chernobyl plant.

21. I quickly realized the dangers and folly of this directive. Chernobyl was a nuclear wasteland. I knew that rebuilding on nuclear tainted territories was absolutely impossible. To do so would mean certain painful death for all inhabitants.

22. Realizing that I must stop this course of events, I became vocal in protest. I began attending meetings and actively participated in demonstrations. I openly spoke out against the Communist party and the Socialist system. I spoke of how Russian domination over Ukraine was destroying our nation and its people.

23. I spoke openly of the dangers of radiation. I realized that the order from Moscow to build a nuclear station in such close proximity to the capital of Ukraine

was criminal negligence of the highest degree.

24. I attended demonstrations and carried the blue and yellow nationalist flag of Ukraine.

25. I advocated for a free Ukraine no longer under a Russian strong-hold.

26. Because of my open advocacy and defiance, I had a series of encounters with the militia and the KGB.

27. I was arrested several times and interrogated.

28. One time I was beaten so severely that once I could no longer move I was transported to the outskirts of the city and thrown into a ditch to die. Thankfully I survived.

29. After such repeated occurrences, I became increasingly frightened for my life. I knew I had to flee.

30. I was harassed and persecuted at the workplace. The situation became so intolerable that after eleven years of dedicated service I was forced to leave.

31. I supported myself with a taxi service.

32. I began planning my escape.

33. On September 3, 1990 I entered the United States.

34. I began preparing my application for political asylum. I believed my asylum application to be on file. It was only when I began seeking alternate legal counsel did I realize that no application had been filed for me. I lost two years of time.

35. I cannot return to Ukraine.

36. While there is a strong international propaganda that Ukraine is free and democratic, I know this is not true. The same bureaucrats and party members who were previously in control continue to exercise power.

37. I believe that my previous political activities coupled with my staunch religious stance has blacklisted me.

38. It is dangerous for me to return.

39. WHEREFORE, here I remain and respectfully request that my petition for asylum be considered and granted.

Date: _1 - 27 - 93_

                                     Vladimir Grigous
                                     195 Case Street
                                     West Granby, CT 06090

Sworn to and subscribed before me
this _29_ day of _January_ 19 _93_

ROXANNE C. HLADYLOWYCZ
ATTORNEY-AT-LAW

# EXHIBIT 2

S. Department of Justice
igation and Naturalization Service — MAP    Document 30-7    Filed 02/02/2004    Page 16 of 75
OMB NO.1115-0086
...est for Asylum in the United Stat

## DO NOT WRITE IN THIS BLOCK - FOR INS USE ONLY

| Asylum Office: | Basis of Asylum Claim: | Action: |
|---|---|---|

INS-FCO:

Received date:

G-28 or VOLAG #

Basis of Asylum Claim:
1. ☐ Race
2. ☐ Religion
3. ☐ Nationality
4. ☐ Membership in a Particular Social Group
5. ☐ Political Opinion

Action:
Asylum: ☐ Granted ☐ Denied    Date: _____
Withholding of deportation: ☐ Granted ☐ Den
Date: _____

Adjudicating Officer

## PART A - INFORMATION ABOUT YOU

1. Alien Registration Number: (if applicable)

2. Name: (Family name in CAPS) (First) (Middle)
   GRIGOUS        Vladimir
   Other names used: (include maiden name or aliases)

3. Address in the U.S.: (Number and Street, Apt.#)
   195 Case St.
   (City or Town) (State) (Zip Code)
   West Granby    Connecticut    06090

4. Address prior to coming to U.S. : (Number and Street, Apt #)
   Lesia Ukrainka St   8/27
   (City or Town) (Province or State) (Country)
   Ternopil        Ukraine

5. Sex: ☒ Male ☐ Female
6. Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed

7. Date of Birth: (Mo./Day/Yr.)
   4/21/57

8. Place of Birth: (City or Town)
   Hai Za Ruda, Ternopil, Ukraine
   (Province) (Country)

9. Nationality: at Birth: Ukrainian
   at Present: Ukrainian
   Other:
   If stateless, how did you become stateless?

10. Race/Ethnic or Tribal Group: Ukrainian

11. Religion: Catholic

12. Arrival in the U.S.:
    Date: (Mo./Day/Yr.) 9/3/90
    Place: (City/State) New York, NY
    ☐ Not in the U.S.

13. Current Immigration Status: (Crewman, Stowaway, Student, Visitor or Other)
    Asylum applicant
    Date authorized stay expires: (Mo./Day/Yr.)
    3/2/91

14. Social Security Number: (if applicable)

15. Telephone Number:
    Home (Area Code): 203  693-4136
    Work (Area Code):

## PART B - INFORMATION ABOUT YOUR FAMILY

16. List your spouse and all your unmarried children under the age of 21:

| Name: | A-Number: (If Applicable) | Sex | Date of birth: | Place of birth: | If in U.S.: Date/Place of Arriv |
|---|---|---|---|---|---|
| Ana Grigous (Spouse) | | f | 3/22/59 | Ukraine | |
| Victor Grigous | | m | /84 | Ukraine | |
| Oksana Grigous | | f | /87 | Ukraine | |

If in the U.S., are your spouse/children included in your request for asylum:

Children ☐ No ☐ Yes    Spouse ☐ No ☐ Yes    If not, is your spouse making a separate application for asylum? ☐ No ☐ Yes    (INS office _____ Results - Granted/Denied)

Form I-589 (Rev. 08-01-91) N

My Spouse/Children Reside: ☐ with me  ☒ apart from me *(if apart, give address)*

Lesia  Ukrainka .St. 8/2        Ternopil,  Ukraine
*(Number and street and Apt. #)*        *(City)*        *(Province)*        *(Country)*

## PART C - INFORMATION ABOUT YOUR CLAIM FOR ASYLUM

18.    Why are you seeking asylum? *(Explain fully what is the basis - attach additional sheets as needed.)*

I am a Ukrainian Catholic.  Throughout my life I have experienced grave persecution becaus
of my religous beliefs.  I was an active member of the Catholic church and as a result I
suffered severe recrimination and retribution first in school and then in the workplace.

Later I became closely connected with the Chernobyl disaster.  I was well aware of the
devistation radiation was creating in Ukraine and I actively worked against the repopulat:
of the Chernobyl district.  For my activities I was harassed and beaten.  I lost my job
and I was blacklisted.

Please see my affidavit for additional information.

19.    What do you think would happen to you if you returned to your home country? *(Explain.)*

If I am forced to return to Ukraine I will be closely watched for counter-revolutionary
sentiment.  The same individuals who previously held power in Soviet Ukraine continue to
hold power in sovereign Ukraine.  I fell into extreme disfavor with them during the Chern
disaster  and if forced to return I will once again be targeted for surveillance.

# EXHIBIT 10



U.S. Department of Jus

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Moore, Michael G.
20 Maple Street, Suite 302
Springfield, MA 01103-0000

Office of the District Counsel/BO
P.O. Box 8728
Boston, MA 02114

Name: GRIGOUS,VLADIMIR

A70-583-407

Date of this notice: 08/14/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely.

*Lori Scialabba*

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HESS, FRED

Board of Immigration Appeals
SECOND MAILING
Date: 8 | 14 | 2002
Initials: DJL

Decision of the Board of Immigration Appeals

U.S. Department of Justice
Executive Office for Immigration Review

Falls Church, Virginia 22041

Date:

MAY 14 2002

File:   A70-583-407 - Boston

In re:  GRIGOUS, VLADIMIR

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Moore, Michael G.

ORDER:

   PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7).

_Frederick O. Hess_
FOR THE BOARD

# ATTACHMENT A

1993 WL 213031
(Cite as: 1993 WL 213031 (S.D.N.Y.))
€

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

**Jesus DEARMAS, Petitioner,**
v.
**IMMIGRATION AND NATURALIZATION
SERVICE, United States Attorney General, New
York State Dept. of Correctional Services,
Respondents.**

**No. 92 Civ. 8615 (PKL).**

June 15, 1993.

Jesus Dearmas, petitioner pro se.

Mary Jo White, U.S. Atty. for the Southern District
of New York, New York City (Diogenes P. Kekatos,
of counsel), for the INS and the U.S. Atty. Gen.

Robert Abrams, Atty. Gen. of the State of New York,
New York City (Tyrone Mark Powell, of counsel),
for the New York State Dept. of Correctional
Services.

OPINION AND ORDER

LEISURE, District Judge,

*1 Petitioner *pro se,* Jesus Dearmas ("Dearmas"),
filed the instant petition for a writ of habeas corpus
on November 30, 1992 pursuant to 28 U.S.C. § 2241
("section 2241") and § 2254 ("section 2254"). This
Court referred the petition to the Honorable Kathleen
A. Roberts, United States Magistrate Judge, Southern
District of New York, pursuant to 28 U.S.C. §
636(b)(1) and Fed.R.Civ.P. 72(b). Magistrate Judge
Roberts issued a Report and Recommendation, dated
April 8, 1993 ("Report and Recommendation"),
concluding that Dearmas' petition should be
dismissed in all respects for lack of jurisdiction and/
or denied on the merits. In accordance with 28
U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), Dearmas
filed timely objections to the **Report and
Recommendation.** Pursuant to 28 U.S.C. § 636(b)(1)
and Fed.R.Civ.P. 72(b), the Court has undertaken a
*de novo* review of those portions of the Report and
Recommendation to which Dearmas has objected.
For the reasons stated below, Dearmas' petition for a
writ of habeas corpus is dismissed for lack of
jurisdiction and denied on the merits.

BACKGROUND

Dearmas is a Cuban "Mariel Freedom Flotilla"
refugee ("Mariel Cuban") who arrived in the United
States in May 1980. As an alien entering the country
for the first time, Dearmas is an "excludable" alien,
rather than a "deportable" alien. *See* 8 U.S.C. §§
1182(a), 1221-1230; *Landon v. Plasencia,* 459 U.S.
21, 25-28 (1982); *Marczak v. Greene,* 971 F.2d 510,
512 n. 3 (10th Cir.1992); *Lopez-Mejia v. INS,* 798
F.Supp. 625, 627 (C.D.Cal.1992). Dearmas was
"paroled" into the United States in 1980. The
Immigration and Naturalization Service (INS) placed
petitioner on "parole" pending an immigration
determination. In so doing, the INS ensured that
Dearmas remained an excludable rather than
deportable alien despite his prolonged stay in the
United States.

On November 8, 1982, a jury in the Westchester
County Court convicted Dearmas of the following:
(1) murder in the second degree; and (2) criminal
possession of a weapon. On March 11, 1985, the
Appellate Division, Second Department, affirmed
Dearmas' conviction and, on May 16, 1985, the Court
of Appeals denied leave to appeal.

On or about January 6, 1983, the INS filed a Form
I-247 with the New York State Department of
Correctional Services indicating that an
"[i]nvestigation has been initiated to determine
whether [Dearmas] is subject to deportation from the
U.S." *See* Notice of Action by Immigration and
Naturalization Service, at 1, annexed as Exhibit 3 to
Dearmas' Petition for Writ of Habeas Corpus, dated
May 1, 1992 ("Petition"). The notice stated:

Accept this notice as a detainer. This is for
notification purposes only and does not limit your
discretion in any decision affecting the offender's
classification, work and quarters assignments or
other treatment which he would otherwise
receive.

Notify this office at least 30 days prior to release
or as much in advance as possible in order that a
decision may be made as to whether this person
will be placed under deportation proceedings by
this Service.

*2 Notify this office in the event of death or
transfer to another institution.

*Id.*

Dearmas claims he twice requested that the INS

1993 WL 213031
(Cite as: 1993 WL 213031, *2 (S.D.N.Y.))

"either process the detainer to determine whether he is an excludable alien, or to drop the parole-detainer altogether," (Petition, at 2), but never received a reply. *See* Petition, at Exhibits 1 and 2. Dearmas further contends that his correction counselor "advised him that due to the INS parole-detainer lodged against him in his institutional records, he w[ould] not be approved to participate in 'Work Release, Outside Clearance work, etc.' (Programs offered to every New York State prisoners [sic] )." Petition, at 2.

In the instant application for a writ of habeas corpus, Dearmas requests that this Court order the INS and United States Attorney General to conduct an expedited hearing to determine his immigration status so that the Department of Correctional Services can allow him to participate in rehabilitation programs. On April 8, 1986, Magistrate Judge Roberts recommended that this petition be denied. Having reviewed the record *de novo,* the Court agrees with the conclusions of the Report and Recommendation and finds that the petition should be denied for the reasons discussed below.

## DISCUSSION
### I. JURISDICTIONAL ISSUE

The Report and Recommendation concluded that the petition should be dismissed for lack of jurisdiction. In order for the District Court to have jurisdiction over Dearmas' habeas claims, Dearmas must be in the custody of the INS. *See* 28 U.S.C. § 2241(c); *see also Prieto v. Gluch,* 913 F.2d 1159, 1162 (6th Cir.1990), *cert. denied,* 111 S.Ct. 976 (1991). Dearmas claims that the detainer lodged with the Warden of the facility where he is imprisoned is sufficient to bring him within the technical custody of the INS and, thus, provide this Court with habeas jurisdiction.

In *Roldan v. Racette,* 984 F.2d 85, 87-88 (2d Cir.1993), a petitioner appealed the lower court's finding that the filing of the INS detainer did not place the petitioner within INS custody and, as a result, the "in custody" predicate of §§ 2241(c)(3) and 2254 for habeas relief against the INS had not been satisfied. The Second Circuit noted that "the clear majority view" is "that an INS detainer constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present

confinement by the INS." *Id.* at 88; *see, e.g., Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990) ("The filing of the detainer, standing alone, did not cause [petitioner] to come within the custody of the INS."); *Prieto,* 913 F.2d at 1162 (the INS detainer does not establish custody by the INS for purposes of habeas jurisdiction); *Campillo v. Sullivan,* 853 F.2d 593, 595 (8th Cir.1988) (INS detainer "merely notifies prison officials that a decision regarding [petitioner's] deportation will be made by the INS at some future date" and, thus, does not create habeas jurisdiction), *cert. denied,* 490 U.S. 1082 (1989); *Lepez-Mejia,* 798 F.Supp. at 627 (detainer "merely *notifies* the prison that the INS has some interest in a particular inmate, and asks prison officials to advise the INS when the inmate is about to be released") (emphasis in original). After describing this "clear majority view" and setting forth the conflicting authority, the Second Circuit declined to decide this issue because of a procedural defect in the petitioner's appeal.

*3 Although the Second Circuit has not decided this issue, the Report and Recommendation correctly notes that district courts in this Circuit have adopted the majority view and found that the mere filing of an INS detainer notice does not satisfy the "in custody" requirement for habeas jurisdiction. *See, e.g., Severino v. Thornburgh,* 778 F.Supp. 5, 7 (S.D.N.Y.1991); *Paulino v. Connery,* 766 F.Supp. 209, 11-12 (S.D.N.Y.1991); *Garcia v. McClellan,* 91 Civ. 3225 (RWS), 1991 U.S.Dist. LEXIS 6744, at *1-2 (S.D.N.Y. May 17, 1991); *Fernandez-Collado v. INS,* 644 F.Supp. 741, 743-44 (D.Conn.1986), *aff'd mem.,* 857 F.2d 1461 (2d Cir.1987).

The Court agrees with the clear majority of courts which have found the filing of a detainer does not constitute "custody" by the INS for purposes of habeas jurisdiction. [FN1] The rationale underlying the "clear majority view" is that an INS detainer, as used in the instant case, does not direct the prison officials to hold the prisoner for the benefit of the INS upon the completion of his sentence. In other words, the detainer does not purport to place the prisoner in the present or future custody of the INS. [FN2] Instead, the INS detainer is simply a notification procedure which advises prison officials that the INS must make a decision regarding the petitioner's deportation at some future date and, thus, needs advance notice as to when the inmate is about to be released. *See Lepez-Mejia,* 798 F.Supp. at 627 ("The detainer merely requests that INS be given advance notice of petitioner's release from custody. He is not being 'held' pursuant to the detainer."). Under such

circumstances, the INS detainer clearly cannot be construed as placing the petitioner in the custody of the INS. [FN3] *See Severino*, 778 F.Supp. at 7 (" 'physical' custody rather than any technical custody by operation of a detainer is essential to establish habeas corpus jurisdiction pursuant to 28 U.S.C. § 2254") (citations omitted); *Paulino*, 766 F.Supp. at 211-12 ("while plaintiff is in the custody of the state, he is not subject to the custody of INS such that custody determinations can be made or deportation hearings begin"); *see also Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir.1989) ( "the filing of an INS detainer with prison officials does not constitute the requisite 'technical custody' for purposes of habeas jurisdiction").

The Court finds the Seventh Circuit decision in *Vargas v. Swan*, 854 F.2d 1028, 1032 (7th Cir.1988), which petitioner cites in his objections, to be unpersuasive. In *Vargas*, the Seventh Circuit found that an INS detainer, if treated by the custodian as a request to hold an inmate at the end of his sentence until the INS can take him into custody, would establish INS custody. 854 F.2d at 1032. Thus, the Seventh Circuit remanded for a determination of whether the INS detainer was treated simply as a notice of INS interest in a prisoner or as a request to hold an inmate upon completion of serving his sentence until the INS can take him into custody. *Id.* at 1033.

*4 As the Sixth Circuit noted in *Prieto v. Gluch*, *supra*, "[a]n examination of the court's reasoning in *Vargas* reveals that the reliance of the *Vargas* court on several United States Supreme Court cases in reaching its conclusion was perhaps misplaced." *Prieto*, 913 F.2d at 1163. The *Vargas* court relied on Supreme Court precedent which held that challenges to future confinement are actionable in a habeas action. *Vargas*, 854 F.2d at 1031 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488-89 (1973); and *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). However, the Supreme Court's decisions in *Preiser* and *Peyton* involved subsequent confinement with the same agency or institution, whereas the *Vargas* case did not. Moreover, in *Braden*, the Supreme Court found that the Alabama warden acted as an agent of the Commonwealth of Kentucky by *holding* the petitioner pursuant to the Kentucky detainer, whereas in *Vargas* the warden clearly was not holding petitioner as an agent of the INS pursuant to the detainer. Recognizing these distinctions, the Sixth Circuit, held

such cases to be inapposite in INS detainer cases where the detainer clearly does not require the petitioner to hold the petitioner or subject him to the future custody of the INS:

> The detainer notice does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose. Thus, it is not the case that the INS detainer in the present case constitutes future confinement as did the detainers involved in *Preiser*, *Peyton* and *Braden*.

*Prieto*, 913 F.2d at 1164. This Court agrees with the Sixth Circuit's conclusion that the *Vargas* decision simply misconstrues the purpose of the INS detainer. The standard INS detainer notice, as used in the instant case, cannot be treated as a request to hold an inmate at the end of his sentence until the INS can take him into custody. Instead, the INS detainer, unlike the detainers in *Preiser*, *Peyton*, and *Braden*, can only be viewed as a notification procedure which the INS utilizes to facilitate its deportation considerations and, thus, a particularized finding by the District Court on this issue in each individual case is not required.

In any event, assuming *arguendo* that a particularized finding is necessary, the Court concludes the INS detainer, as used in the particular circumstances of the instant case, clearly did not constitute a request that the petitioner be held for the benefit of the INS at the termination of his state prison term. Instead, even a cursory review of the language in the detainer reveals that the detainer at issue is simply a request for prior notice regarding the termination of confinement and, in no way, suggests that the prison officials detain Dearmas *after* the termination of his state prison term until the INS is able to gain custody. Therefore, the detainer at issue here "does not claim the right to take the petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose." *Prieto*, 913 F.2d at 1164. Accordingly, since Dearmas is clearly not in the custody of the INS at this time, the Court does not have jurisdiction over petitioner's habeas claim.

## II. THE MERITS

Even if the Court had jurisdiction over these claims, Dearmas' petition also must be denied because it fails on the merits. Dearmas claims that an expeditious hearing to determine his immigration status is required under 8 U.S.C. § 1252(i). Section 1252(i)

states:

   *5 In the case of an alien who is convicted of an
   offense which makes the alien subject to
   deportation, the Attorney General shall begin any
   deportation proceeding as expeditiously as
   possible after the date of the conviction.

8 U.S.C. § 1252(i). An overwhelming majority of
the circuit courts have held that section 1252(i) does
not give an incarcerated alien a private right of action
to compel the INS to conduct an expeditious
deportation hearing. [FN4] See, e.g., Giddings v.
Chandler, 979 F.2d 1104, 1110 (5th Cir.1992)
(criminal alien lacked standing to bring suit under
either Mandamus Act or Administrative Procedure
Act to compel INS to commence deportation
proceedings under section 1252(i)); Perez v. INS,
979 F.2d 299, 301 (3d Cir.1992) (alien could not
compel INS to deport her prior to completion of her
custodial sentence); Aguirre v. Meese, 930 F.2d
1292, 1293 (7th Cir.1991) (per curiam) (incarcerated
alien has no private right of action under section
1252(i) to compel the Attorney General to conduct an
expeditious deportation hearing); Prieto, 913 F.2d at
1165-66 (same); Orozco, 911 F.2d at 541 (same);
Gonzalez v. INS, 867 F.2d 1108, 1109-10 (8th
Cir.1989) (same). The only contrary authority is
Soler v. Scott, 942 F.2d 597, 601 (9th Cir.1991)
which the Supreme Court vacated as moot and
remanded with directions that it be dismissed. See
Sivley v. Soler, 113 S.Ct. 454, 454-55 (1992).

Although the Second Circuit apparently has not
addressed this issue, district courts in this Circuit
have followed this majority approach. See United
States v. Garcia, No. S 91 Cr. 724 (CSH), 1992 WL
276553, slip op. at 2 (S.D.N.Y. September 29, 1992)
(incarcerated alien "has no private cause of action to
compel the INS to begin deportation proceedings
prior to his release from custody"); Severino, 778
F.Supp. at 6-7 (alien who is not in INS custody does
not have right to expeditious deportation proceeding);
Paulino, 766 F.Supp. at 212 ("Section 1252(i) ...
cannot be interpreted to require that INS conduct
deportation hearings prior to plaintiff's release from
prison.").

The Court agrees with the majority approach and
holds that Dearmas does not have a cause of action
under section 1252(i) to compel the INS to conduct
an expeditious deportation hearing while he is still in
state custody.     It is clear from the statutory
framework that, under section 1252(i), the Attorney
General must hold deportation hearings expeditiously

once the state has released petitioner from its custody.
Until that time, petitioner is subject to state custody
and there is no requirement that the INS conduct such
a hearing.    See, e.g., Prieto, 913 F.2d at 1165-66;
Paulino, 766 F.Supp. at 211-12; Fernandez-Collado,
644 F.Supp. at 744.

Courts have repeatedly held that 8 U.S.C. § 1252(i)
is not concerned with rights of criminals but with
hindering the flow of narcotics into the country by
illegal aliens and with the problem of overcrowded
prisons.    See, e.g., Prieto, 913 F.2d at 1165 ("the
language of the statute and the legislative history both
indicate that Congress did not intend to benefit
criminal aliens when it enacted section 1252(i)"); see
also Cabezas v. Scott, 717 F.Supp. 696, 697
(D.Ariz.1989) (Section 1252(i) "was intended to
address the balance of state versus federal
responsibility for incarcerated aliens subject to
deportation, rather than for the benefit of deportable
aliens.    The statute, therefore, does not provide
petitioner with a private right of action."); Limas v.
McNary, 799 F.Supp. 1259, 1262 (D.Mass.1992) (the
purpose of section 1252(i) was "not to create new
causes of action through which convicted aliens could
seek to direct the timing of deportation proceedings
against them").    The Court, therefore, declines to
grant Dearmas' request that section 1252(i) be read as
requiring the Attorney General to hold an expeditious
deportation proceeding while Dearmas is incarcerated
because of his state conviction. As the Court noted
in Paulino v. Connery, supra, "[t]his interpretation of
§ 1252(i) does not render it meaningless" because
"[o]nce plaintiff has been released from prison the
Attorney General is under a duty to proceed
expeditiously in determining whether to retain
custody over him pending deportation proceedings
and in making a final deportation determination."
766 F.Supp. at 212.

   *6 Dearmas further claims that his constitutional
rights have been violated due to the lack of an
expeditious hearing because the failure to conduct
such a hearing has resulted in the prison prohibiting
him from participating in "rehabilitation programs"
such as the work release program.    The Court finds
this position to be untenable.    First, the Court notes
that the detainer in the instant case specifically
informs the state prison facility as follows: "This is
for notification purposes only and does not limit your
discretion in any decision affecting the offender's
classification, work and quarters assignments or other
treatment which he would otherwise receive."    In
Paulino v. Connery, this Court emphasized that such

language "makes clear that INS has not joined any decision to prohibit plaintiff from participating in a work release program, and cannot be held liable for any such decision." 766 F.Supp. at 211.

In any event, as noted in *Paulino*, it is well settled that prisoners have no constitutional right to participate in work release programs. *See Paulino,* 766 F.Supp. at 211; *see also Fernandez-Collado,* 644 F.Supp. at 744 ("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."); *see generally Rinaldi v. United States,* 484 F.Supp. 916, 917 (S.D.N.Y.1977).

Accordingly, although the effect of the INS detainer may be to deny Dearmas the ability to participate in a work release program or other "rehabilitation programs," no constitutional rights have been violated and petitioner is not entitled to an expedited deportation hearing on such grounds.

### III. CLAIM AGAINST STATE RESPONDENT

In addition to bringing this action against the INS and Attorney General, Dearmas also named the New York State Department of Correctional Services (the "State") as a defendant. The State has moved to dismiss the petition as to the State because Dearmas concedes that he is not challenging the fact or duration of his state custody and because Dearmas has failed to exhaust his state remedies before commencing a federal habeas corpus proceeding. Magistrate Judge Roberts concluded that, on such grounds, the petition should be dismissed against the State. Since Dearmas states, in his Motion in Opposition to Recommendation of Dismissal, dated April 16, 1993, at 1, that he has "no opposition to the dismissal of the charges against the State," the Court need not address this issue. In any event, the Court agrees with the conclusion of the Report and Recommendation and finds that the claim against the State should be dismissed.

### CONCLUSION

For the reasons stated above, Dearmas' petition for a writ of habeas corpus is dismissed for lack of jurisdiction and denied on the merits.

SO ORDERED

FN1. The Court recognizes that an earlier

line of cases maintained that the filing of an INS detainer results in "technical custody" of the particular prisoner by the INS. *See Chung Young Chew v. Boyd,* 309 F.2d 857, 865 (9th Cir.1962); *Slavik v. Miller,* 89 F.Supp. 575, 576 (W.D.Pa.), *aff'd,* 184 F.2d 575 (3d Cir.), *cert. denied,* 340 U.S. 955 (1951). The Court finds these decisions distinguishable because, as noted in *Fernandez-Collado v. INS,* "[i]n both *Slavik* and *Boyd* ... the I.N.S. had already completed its deportation proceedings, a determination of deportability had been made, and the petitioners had been ordered deported." 644 F.Supp. at 743. In fact, in *Boyd,* the detainer was based upon an arrest warrant obtained by the INS allowing the named immigration officer to take the petitioner into custody upon his release from prison. Therefore, the detainers in those cases cannot be analogized to the INS detainer used in the instant case which simply serves a notification function and does not establish any right to future custody.

To the extent these decisions can arguably be interpreted as supporting the position that the simple filing of the standard INS detainer, as used in the instant case, constitutes "custody" and establishes jurisdiction, the Court simply rejects those decisions and, instead, agrees with the clear majority position described earlier.

FN2. The Court notes that, pursuant to 8 U.S.C. § 1252(h), a sentenced inmate cannot be deported while imprisoned. Therefore, as the court noted in *Fernandez-Collado v. I.N.S.,* "the I.N.S. has absolutely no occasion to consider release or custody of petitioner until after his release from his current confinement." 644 F.Supp. at 744.

FN3. The fact that Dearmas is apparently "excludable", rather than "deportable," does not impact on the issue of INS custody because, in either situation, the detainer merely serves a notification function. Thus, even though Dearmas is "excludable" and has "parole" status, that technical classification does not alter the Court's analysis in any way and does not create custody for purposes of habeas jurisdiction.

FN4. As the Report and Recommendation notes, one court also has held that Section 1252(i) does not apply to aliens, such as Dearmas, who are "excludable," rather than "deportable." *See Lopez-Mejia,* 798

1993 WL 213031
(Cite as: 1993 WL 213031, *6 (S.D.N.Y.))

F.Supp. at 628.

1993 WL 213031, 1993 WL 213031 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT  B

1991 WL 90755
(Cite as: 1991 WL 90755 (S.D.N.Y.))
C

Page 1

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

**Fernando E. GARCIA, Petitioner,**
v.
**Robert J. McCLELLAN, Superintendent,
Southport Correctional Facility,
Respondent.**

No. 91 Civ. 3225 (RWS).

May 20, 1991.

*MEMORANDUM OPINION*

SWEET, District Judge.

*1 *Pro se* petitioner Fernando E. Garcia ("Garcia"), an inmate in the custody of New York State, seeks writ of habeas corpus pursuant to 28 U.S.C. § 2254 compelling the United States Immigration and Naturalization Service ("INS") to instigate deportation proceedings against him. Because the court has no jurisdiction to entertain Garcia's request, the petition is dismissed.

Garcia, a citizen of the Dominican Republic, is currently serving an indeterminate term of eight years to life as a result of pleading guilty on August 25, 1989 to Criminal Sale of a Controlled Substance in the Second Degree in the New York State Supreme Court for Suffolk County. He seeks to compel the INS to deport him to the Dominican Republic as an alien convicted of a drug-related felony under 8 U.S.C. §§ 1251(a)(11) and 1252. In particular, Garcia seeks an order directing the INS to deport him prior to the completion of his prison term, relying on § 1252(i), which directs the Attorney General to "begin any deportation proceeding as expeditiously as possible after the date of conviction."

The primary defect of Garcia's petition is that the court lacks jurisdiction over the case. "Absent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ." *Campillo v. Sullivan*, 853 F.2d 593 (8th Cir.1988) (denying habeas petition seeking immediate deportation during state term of imprisonment), *cert. denied*, 490 U.S. 1082 (1989). Here, Garcia is in the custody of the state prison authorities, yet he seeks relief against the INS. Therefore, the petition must be dismissed.

Moreover, Garcia's argument fails in light of the explicit provisions of § 1252(a)(2), which specifies that "[t]he Attorney General shall take into custody any alien convicted of an aggravated felony *upon completion of the alien's sentence for such conviction* " (emphasis added), and § 1252(h), "An alien sentenced to imprisonment *shall not be deported until such imprisonment has been terminated by the release of the alien from confinement.*" (emphasis added). Garcia's unsupported assertion that 1252(i)'s provision for "expeditious deportation" overcomes these explicit limitations is unavailing.

As a final matter, there is no authority for the proposition that § 1252(i) creates a private right of action at all:

[W]e note that an examination of the statute and its legislative history reveals that it was intended more as a directive to the INS rather than as a vehicle for incarcerated aliens to demand immediate deportation hearings.

*Campillo, supra,* 865 F.2d at 596.

For the foregoing reasons, Garcia's petition must be dismissed. Because there are no substantial questions presented for appellate review, a certificate of probable cause will not issue. Finally, because it does not appear that any appeal would be taken in good faith, leave to appeal *in forma pauperis* will be denied. 28 U.S.C. § 1915(a); *Coppedge v. United States,* 369 U.S. 438 (1962).

*2 It is so ordered.

1991 WL 90755, 1991 WL 90755 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT C

1995 WL 604327
(Cite as: 1995 WL 604327 (W.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

### John A. CASTRONOVA, Petitioner,
v.
### UNITED STATES PAROLE COMMISSION,
Respondent.

No. 94-CV-606S.

Aug. 29, 1995.

John A. Castronova, Pro Se.

Patrick H. NeMoyer, U.S. Atty., by Mary Pat
Fleming, AUSA, Buffalo, NY, for respondent.

### DECISION AND ORDER

SKRETNY, District Judge:

#### INTRODUCTION

*1 Presently before this Court is John Castronova's
("petitioner") *pro se* petition for a writ of habeas
corpus and the motion to dismiss filed by the United
States Parole Commission (the "Government" or
"Respondent").

Petitioner alleges that (1) he is being illegally
detained by respondent because he was not given his
dispositional review under 18 U.S.C. § 4214(b)(1)
within 180 days of a federal parole detainer having
been lodged against him. He asserts that the failure to
conduct such dispositional review within the time
alloted under the statute violates his Fifth Amendment
right to due process. Further, he claims he has been
prejudiced by the delay because the detainer renders
him ineligible for certain rehabilitative programs.

Respondent has moved to dismiss the habeas corpus
petition on the grounds that (1) it is not the proper
party in this action because it does not have custody
over Mr. Castronova; (2) any delay in granting the
petitioner a review is his own fault, because he did
not complete the paperwork twice sent him by the
Commission; and (3) that if petitioner is entitled to
any legal relief, such relief is more properly a petition
for mandamus to compel compliance with the statute,
not a writ of habeas corpus striking the detainer.

In support of its motion to dismiss the petition for

writ of habeas corpus ("Petition"), respondent has
submitted the affidavit of Assistant United States
Attorney Mary Pat Fleming, Esq. with exhibits
("Fleming Aff."), a memorandum of law
("G.Memo"), a statement of undisputed facts
("G.Fact") and a reply memorandum ("G.Reply").
Respondent has also filed an answer to the petition
("Answer"). In opposition to the motion to dismiss,
petitioner has submitted Plaintiff's Answer to
Defendant's Motion ("P.Resp.").

Although petitioner has requested a hearing on the
merits of this action, this Court, having reviewed the
parties' respective submissions on the motion to
dismiss, finds that pursuant to Rule 7.3 of the Local
Rules of Civil Procedure for the Western District of
New York oral argument is unnecessary at this time.

Having considered the parties' arguments and the
facts in light of the relevant legal standards, this
Court finds that petitioner is not entitled to habeas
corpus relief, but shall grant petitioner's request to
transform his application to one for mandamus relief.
Accordingly, this Court shall grant, in part, and deny,
in part, the government's motion to dismiss for the
reasons set forth below.

#### FACTS

Petitioner is currently in the custody of the New
York State Department of Correctional Services at
the Groveland Correctional Facility in Sonyea, New
York. (Petition ¶ 1; G.Fact ¶ 1.) He was arrested for
burglary while on parole for a prior federal offense.
(Petition Exh. A; Fleming Aff. Exh. A.) Before the
Suffolk County Court, petitioner received a sentence
of from four to eight years in prison on December 14,
1992, his sentence to run concurrently with any
parole time petitioner was serving. (Petition ¶ 2, Exh.
A; Fleming Aff. Exh. A; G.Fact ¶ 2.)

*2 The United States Marshals Service lodged a
detainer against the petitioner on November 3, 1992.
(Fleming Aff. Exh. B; G.Fact ¶ 3.) However, it was
not until June 13, 1994, that a packet of materials was
sent to Groveland Correctional Facility to commence
procedures for a dispositional review. (Fleming Aff. ¶
4, Exh. B; G.Fact ¶ 4.) These materials included a
form for petitioner to request appointment of counsel
to represent him in preparing his comments for the
dispositional review, a form on which petitioner
could make a statement regarding the disposition of
the detainer, and documents directed at the State

Facility, such as information regarding petitioner's conduct during confinement and his anticipated release date. (*Id.*) When no response to this packet was received, a second packet of materials was sent to the Groveland Correctional Facility and to the petitioner on November 7, 1994. (Fleming Aff. ¶ 5, Exh. C.; G.Fact ¶ 2.) Respondent claims that to date it has received no response from either the petitioner or the Groveland Correctional Facility regarding dispositional review of the detainer. (Fleming Aff. ¶ 10; G.Fact ¶ 6; P.Resp. at p. 4.)

On August 23, 1994, petitioner commenced the present action to obtain a writ of habeas corpus striking the detainer which has been pending against him.

### DISCUSSION

When a federal parolee is convicted of a subsequent federal, state or local crime, and is serving a new sentence in an institution, "a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer." 18 U.S.C. § 4214(b)(1). [FN1] The statute also states:

Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement. The parolee shall receive notice of the pending review, have an opportunity to submit a written application containing information relative to the disposition of the detainer, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section to assist him in the preparation of such application.

*Id.*

Petitioner claims that his rights were violated because he has not received a timely dispositional review. Respondent contends that any delay in the holding of such review is petitioner's fault, because he did not respond to the government's attempts to commence dispositional review proceedings. Petitioner does not contest that he failed to respond to respondent's requests, other than to file this lawsuit. However, it is uncontested that the paperwork for commencing the review was sent two years after the lodging of the detainer.

Respondent moves to dismiss under Fed.R.Civ.P. 12(b)(6) on several grounds. Respondent first contends that this Court lacks jurisdiction over this action because it does not have custody over

petitioner. With regard to this argument, 28 U.S.C. § 2241(c)(3) provides, in pertinent part, that a writ of habeas corpus "shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States." Respondent argues that petitioner is not in its custody because it has "only lodged a federal parole detainer against him" and he is presently in state custody by virtue of his incarceration at the Groveland Correctional Facility. (G.Memo at p. 4.) Unfortunately, respondent has submitted no legal authority to support this argument that a federal parole detainer does not satisfy the "in custody" requirement of the habeas statute. Petitioner counters that by filing the detainer "the United States Parole Commission, through the denial of [petitioner's] rights of Due Process, has created a situation of *constructive custody* which has caused him to be excluded from rehabilitative programs at the state prison." (P.Resp. at p. 3.)

*3 In addressing this "in custody" issue, it is first relevant to note that

the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody .... The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter....

*Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 494-95, 93 S.Ct. 1123, 1129-30, 35 L.Ed.2d 443 (1973) (internal quotation omitted). Therefore, in determining whether the lodging of a detainer placed petitioner in respondent's custody it is necessary to consider the nature and purpose of a detainer. The Supreme Court and Second Circuit Court of Appeals have recognized a detainer to be "an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act." *Moody v. Daggett,* 429 U.S. 78, 80-81 n. 2, 97 S.Ct. 274, 275-76 n. 2, 50 L.Ed.2d 236 (1976); *D'Amato v. United States Parole Commission,* 837 F.2d 72, 73 n. 1 (2d Cir. 1988). Defined as thus, detainers arise most frequently in the parole and immigration settings.

There is a wealth of case law recognizing that the mere filing of a detainer by the Immigration and Naturalization Service ("INS detainer") against a person in state custody does not give rise to INS

custody for habeas corpus purposes. For example, in *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993), the petitioner illegally re-entered the United States in 1989 and was arrested for driving while intoxicated. The petitioner was incarcerated in state prison and the INS lodged a detainer against him with state prison officials. Thereafter, petitioner filed a habeas corpus petition challenging the validity of the INS detainer. On appeal from the district court's dismissal of the petition, the Second Circuit was initially faced with the determination in the magistrate judge's report and recommendation that "the filing of the INS detainer did not place Roldan within INS custody, with the result that Roldan did not satisfy the 'in custody' predicate of §§ 2241(c)(3) and 2254 for habeas relief against the INS." *Id.*, 984 F.2d at 87-88. The court then noted that the clear majority view on this issue is

> that an INS detainer constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present confinement by the INS.

*Id.*, 984 F.2d at 88 (collecting cases supporting the majority view); *see also Waldron v. I.N.S.*, 17 F.3d 511, 515-16 (2d Cir. 1994), *cert. denied*, -- U.S.--, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). However, because of a procedural defect in the petitioner's appeal the Second Circuit did not resolve the question of whether the majority view is the law of this Circuit.

*4 Although the Second Circuit has not yet resolved this question, "the district courts in this Circuit have adopted the majority view and found that the mere filing of an INS detainer notice does not satisfy the 'in custody' requirement for habeas jurisdiction." *Dearmas v. INS*, 1993 WL 213031, *3, 1993 U.S. Dist. LEXIS 8169, *7 (S.D.N.Y. June 15, 1993) (citing cases). As such, if this case merely involved the filing of a detainer against petitioner under circumstances similar to those in the usual INS context, *see Waldron v. I.N.S.*, 17 F.3d at 516 (explaining the circumstances under which an INS detainer may give rise to custody), this Court would be inclined to adopt the government's argument and find that petitioner is unable to satisfy the "in custody" requirement of the habeas statue.

However, in the present case the Marshals Service lodged the detainer against the petitioner while he was on parole/supervised release. As such, an additional circumstance exists in the present case:

petitioner's status as a federal parolee. In this regard, the Supreme Court and the Second Circuit have recognized that a prisoner who has been released from physical custody but has been placed on parole/ supervised release remains "in custody" for habeas purposes where such status results in restrictions on freedom and liberty. *Maleng v. Cook*, 490 U.S. 488, 491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994); *Dodd v. United States Marshal*, 439 F.2d 774, 775 n. 2 (2d Cir. 1971). But, even if a petitioner's parole status represents custody, he must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. at 490-91, 109 S.Ct. at 1925. Thus, petitioner must not only be in custody, such custody must be based on the government action he is attacking by way of the habeas petition.

This Court first notes that the present record does not provide a sufficient basis to definitively find that petitioner's parole status did not result in continuing custody of him by federal authorities. The government's present motion simply does not address this issue. Assuming that petitioner's parole status did constitute custody, the inquiry turns to whether custody based on parole is sufficiently connected with the parole detainer to support a determination that custody exists with respect to the government action being challenged by way of the present petition. A sufficient connection may exist because the detainer represents a present claim by the federal government to petitioner's person based on his status as a parolee. Also, the government's detainer reflects an assertion of "the right to subject [petitioner] to its orders and supervision in the future." *United States ex rel. Meadows v. New York*, 426 F.2d 1176, 1179 (2d Cir. 1970), *cert. denied*, 401 U.S. 941, 91 S.Ct. 944, 28 L.Ed.2d 222 (1971) [FN2]; *see also Frazier v. Wilkinson*, 842 F.2d 42, 44-45 (2d Cir. 1988) (implicitly acknowledging continued vitality of *Meadows*), *cert. denied*, 488 U.S. 842, 109 S.Ct. 114, 102 L.Ed.2d 88 (1988). However, it is impossible to resolve these issues based on the present record. Accordingly, respondent's argument that the petition should be dismissed because petitioner cannot satisfy the custody requirement of the habeas statute must be rejected at this time. [FN3]

*5 Respondent's second argument in support of dismissal is that petitioner is not entitled to habeas relief based on failure to conduct a timely dispositional review because he cannot establish that

the delay resulted from bad faith on the part of the Parole Commission or has caused him prejudice. The Court of Appeals for the Second Circuit endorsed this legal standard in *Heath v. United States Parole Commission,* 788 F.2d 85 (2d Cir. 1986), *cert. denied,* 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986), where it recognized that "[e]ven assuming dispositional review was untimely, absent prejudice or bad faith on the Commission's part, the appropriate remedy is not a writ of habeas corpus, but a writ of mandamus to compel compliance with the statute." *Id.,* 788 F.2d at 89; *see also Judd v. Baer,* 911 F.2d 571, 574 (11th Cir. 1990); *Hopper v. United States Parole Commission,* 702 F.2d 842, 847 (9th Cir. 1983); *Smith v. United States,* 577 F.2d 1025, 1027 (5th Cir. 1978) (habeas relief predicated upon a showing of prejudice or bad faith).

Here, petitioner makes no specific allegation that noncompliance with the statute is the result of bad faith on the part of the government. Although petitioner complains of the lengthy delay in carrying out the dispositional review process, bad faith is not apparent from the record. Instead, such delay appears to have resulted from communication problems and administrative oversight.

Petitioner does, however, allege that he has been prejudiced. First, petitioner asserts that his "rights to Due Process under the 5th Amendment of the United States Constitution have been irrevocably violated by the Commission." (Petition ¶ 4.) Second, petitioner asserts that he "has been prejudiced by this unlawful and Constitutionally violative act by the Commission in that he is ineligible for certain rehabilitative programs offered within the New York State Department of Correctional Services by the existence of this Detainer in his records." (Petition ¶ 5; P.Resp. at p. 3-4.) Respondent counters that these claims are remote, speculative, and unsupported by the record.

Addressing each of these arguments, this Court first notes that petitioner's generalized claim that he has been prejudiced by the denial of his Fifth Amendment rights is conclusory and unsupported. In *Moody v. Daggett* the Supreme Court established "execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Id.,* 429 U.S. at 87, 97 S.Ct. at 279 (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). As such, when "an unexecuted federal parole violator warrant is lodged with state prison officials as a detainer, at least where the warrant is based on a state conviction for a

felony which was committed while the prisoner was on federal parole," the prisoner does not suffer a deprivation of liberty equating to prejudice. *Maggio v. United States Parole Commission,* 466 F.Supp. 322, 325 (E.D.N.Y. 1979); *see also United States ex rel. Hahn v. Revis,* 560 F.2d 264, 265 (7th Cir. 1977) ("the petitioner in this case[, a federal parolee,] suffered no loss of liberty when the parole violation warrant was lodged as a detainer at the Illinois prison"). As explained by the Court of Appeals for the Ninth Circuit, it is difficult for a petitioner to establish prejudice from delay in holding a dispositional review because "the dispositional review merely determine[s] whether or not the parole violator warrant w[ill] continue to stand as a detainer while [petitioner i]s still in the custody of state authorities, serving a lengthy sentence. The review ... ha[s] no immediate effect upon [petitioner's] liberty." *Poyner v. U.S. Parole Commission,* 878 F.2d 275, 276-77 (9th Cir. 1989). Based on these authorities, this Court finds that petitioner is not suffering a loss of liberty due to the mere lodging and existence of the detainer.

*6 This Court must next address plaintiff's claim that he has been prejudiced because the detainer placed against him has foreclosed his participation in rehabilitative and educational programs within the state prison. The first difficulty with this claim is that as a general rule a prisoner does not hold a protected interest in such programs. *Moody v. Daggett,* 429 U.S. at 88 n. 9, 97 S.Ct. at 279 n. 9; *McDonald v. New Mexico Parole Board,* 955 F.2d 631, 634 (10th Cir. 1991), *cert. denied,* 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992); *Sutherland v. McCall,* 709 F.2d 730, 733 (D.C.Cir. 1983) ("[w]hether or not these concerns may constitute constitutionally protected due process interests in an extreme case, they do not rise to that level generally"); *see also Sandin v. Conner,* – U.S.–, 115 S.Ct. 2293 (1995) (recent reevaluation of circumstances which are sufficient to give rise to liberty interest protected by the Due Process Clause). Second, even if exclusion from such programs may constitute prejudice, *see Heath v. United States Parole Commission,* 788 F.2d at 90, in this case a claim of prejudice is simply too speculative. Petitioner has neither argued nor identified any considerations which suggest the possibility that a timely dispositional review would have led to the lifting of the detainer. As such, even if plaintiff had received such review in a timely manner, "the likely outcome ... would have been to let the federal detainer stand until the end of [petitioner's] state imprisonment." *Shelton v. Taylor,* 550 F.2d 98,

103 (2d Cir. 1977), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). Under all of these circumstances, petitioner's ineligibility for rehabilitation programs and anxiety associated therewith are simply inadequate to establish prejudice. *Prescott v. United States Parole Commission,* 1990 WL 34698 (E.D.N.Y.)

Finally, if delay in conducting the required dispositional review negatively affects a petitioner's ability to present mitigating evidence, prejudice may be established. *Moody v. Daggett,* 429 U.S. at 88 n. 9, 97 S.Ct. at 279 n. 9; *U.S. ex rel. Caruso v. United States Board of Parole,* 570 F.2d 1150, 1154 (3d Cir. 1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978). In this case, petitioner does not argue that mitigating evidence has been lost nor is there any basis in the record to infer that such an argument could be properly made.

Therefore, petitioner has not shown prejudice or bad faith on the part of the government in connection with the failure to provide him with timely dispositional review of his detainer. Accordingly, petitioner is not entitled to habeas corpus relief, and this Court shall grant respondent's motion to dismiss his petition for such relief.

Nevertheless, the Second Circuit has recognized that "the remedy which Congress contemplated for the Commission's failure to comply with statutory time limits was not release from confinement but a writ of mandamus to compel compliance." *Heath v. United States Parole Commission,* 788 F.2d at 89; *see also Carlton v. Keohane,* 691 F.2d 992, 993 (11th Cir. 1982). As recognized by the Court of Appeals for the Fifth Circuit,

   *7 those who come to the courts seeking compliance with the timetable established by Congress should not be left remediless. Accordingly, those persons who approach the court seeking dispositional review towards the end of the statutory period should come armed with the full enforcement powers of the judiciary. Thus, if at the expiration of the statutory period a proper hearing has not been held, a mandamus action to compel compliance would be appropriate ....

*Lambert v. Warden U.S. Penitentiary,* 591 F.2d 4, 7-8 (5th Cir. 1979). Respondent does not contest that mandamus is the proper remedy in this situation. (Fleming Aff. ¶7; G.Memo at pp. 4-8; Answer at p. 2.)

Although petitioner expressly fashioned this action as one for habeas corpus relief, the Supreme Court has directed that *pro se* pleadings are to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Likewise, the Second Circuit has held that *pro se* habeas corpus petitions should be viewed with a "lenient eye." *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983). Affording plaintiff's submissions the liberal construction to which they are entitled, this Court views petitioner to have adequately presented an application for mandamus relief. Moreover, petitioner has requested that the court "transfer" (i.e., transform) his petition for habeas relief to one for mandamus, if appropriate. (P.Resp. at p. 4.) Under these circumstances, this Court finds that petitioner has properly presented for consideration a petition for writ of mandamus.

Three elements must be met for a writ of mandamus to issue: (1) a clear right in the petitioner to the relief sought; (2) a plainly defined and peremptory duty on the respondent's part to do the act in question; and (3) lack of another available, adequate remedy. *Billiteri v. United States Board of Parole,* 541 F.2d 938, 946 (2d Cir. 1976). In this case, respondent's duty to act is described in 18 U.S.C. § 4214(b)(1), which states that the "detainer *shall be reviewed* by the Commission within one hundred and eighty days of notification to the Commission of placement" (emphasis added). Second, petitioner has a clear right to receive a dispositional review of the detainer. As noted by the Fifth Circuit in *Lambert v. Warden,* "Congress has enacted time limits which govern dispositional reviews, revocation hearings, etc., and failure of the courts to enforce these time limits would make a mockery of this clear legislative charge." *Id.,* 591 F.2d at 7. Even though petitioner does not deny failing to respond to the Commission's requests (P.Resp. at p. 4.), it cannot be ignored that these requests were not sent to petitioner until almost two years after the lodging of the detainer and that he is still entitled to dispositional review. Third and finally, petitioner having been denied habeas relief, the only appropriate remedy remaining is the issuance of a writ of mandamus to compel the Commission to hold the required dispositional review.

*8 Given the procedural posture of this case, the government has not yet had an opportunity to respond to the petition for mandamus relief. Before such a writ shall issue, the government should have an

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1995 WL 604327
(Cite as: 1995 WL 604327, *8 (W.D.N.Y.))

opportunity to respond. Moreover, this Court notes that in a letter filed with the Clerk of the Court on December 9, 1994, and in his response to respondent's motion, petitioner indicates that he has received some of the papers necessary to proceed with the dispositional review. As such, the mandamus issue may become moot if the government proceeds to conduct a dispositional review, which it appears from the present record it clearly contemplates doing. In addition, mandamus would be inappropriate if petitioner rather than the government is preventing dispositional review from taking place. All of these matters must be clarified before this Court may resolve the issue of granting petitioner mandamus relief.

### ORDER

IT HEREBY IS ORDERED that respondent's motion to dismiss the writ of habeas corpus is GRANTED.

FURTHER, that this Court construes petitioner to have placed before the Court an application for writ of mandamus seeking to compel the government to provide him with dispositional review.

FURTHER, that counsel for the government shall file with the Clerk of the Court and serve a response to the application for a writ of mandamus on or before Friday, September 15, 1995.

FURTHER, that petitioner shall file with the Clerk of the Court and serve any reply thereto on or before Friday, October 13, 1995.

FURTHER, this Court shall schedule a hearing or argument on the application on an as-needed basis.

SO ORDERED.

FN1. Section 4214 was repealed, effective November 1, 1987. The statute is to remain in effect for ten years after November 1, 1987, as to an individual who committed an offense or an act of juvenile delinquency before November 1, 1987. 18 U.S.C. §4214 (Supp. 1995); *see Skowronek v. Brennan,* 896 F.2d 264, 267 n. 5 (7th Cir. 1990).

FN2. *Meadows* involved a New York rather than federal detainer. Although there may be distinctions between the two, this Court notes that the overall rationale of *Meadows* for the finding of "in custody" would seem to apply in this case where the detainer is one based on a parole violation.

FN3. This Court does note that in *Moody v. Daggett,* the Supreme Court held that

we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which [the prisoner] sought to protect. Indeed, in holding that the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody, we established execution of the warrant and custody under the warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does no occur until the parolee is taken into custody under the warrant.

*Id.,* 429 U.S. at 87, 97 S.Ct. 278-79 (internal quotations and citations omitted). Although these comments refer to "custody," they are addressed to the merits of the petitioner's constitutional claim that he was deprived of his Fourteenth Amendment protected liberty interests rather than whether the "in custody" prerequisite to habeas relief was satisfied. Thus, *Moody* does "not answer the question whether a prisoner against whom a detainer has been lodged is 'in custody' for purposes of the habeas statutes." *Koetting v. Thompson,* 995 F.2d 37, 39 (5th Cir. 1993).

1995 WL 604327, 1995 WL 604327 (W.D.N.Y.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT D

1985 WL 6439                                                    Page 8
(Cite as: 1985 WL 6439 (D.Conn.))
C

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Eliconis **HECHAVARRIA-CASTELLANO**
v.
**UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE.**

**Civ. No. H-84-498 (JAC).**

April 12, 1985.
Recommended Ruling on Plaintiff's Motion to
Reconsider March 19, 1985.
Recommended Ruling and Order Jan. 14, 1985.

James Greene, Hartford, Conn., for plaintiff.

Robert Brooks, Assistant U.S. Attorney, Hartford,
Conn., for defendant.

ORDER

JOSE A. CABRANES, District Judge.

\*1 Absent a timely objection to the Magistrate's
recommended ruling, *see* 28 U.S.C. § 636(b)(1) and
Rule 2 of the Rules for U.S. Magistrates for the
District of Connecticut, and for the reasons stated by
the Magistrate, the Ruling on Plaintiff's Motion to
Reconsider is hereby accepted and adopted as the
decision of the court. *See* endorsement order (filed
4/12/85) adopting the Magistrate Recommended
Ruling and Order (filed 1/14/85).

It is so ordered.

*RECOMMENDED RULING ON PLAINTIFF'S
MOTION TO RECONSIDER*

F. OWEN EAGAN, United States Magistrate.

On January 9, 1985, this Magistrate issued a
Recommended Ruling and Order dismissing the
plaintiff's complaint for failure to state a claim under
either 42 U.S.C. § 1983 or 8 U.S.C. § 1255. Plaintiff
filed the instant motion [FN1] on February 26, 1985,
in which he seeks reconsideration based upon the
court's refusal to accept his *pro se* pleadings.

By footnote in the previous Recommended Ruling,
this court acknowledged that although the plaintiff
had been appointed counsel to assist him in this case,

no appearance had been filed, nor had any pleadings
been submitted on plaintiff's behalf.  However, since
the plaintiff's complaint was meritless on its face, the
court stated that lack of representation 'does not affect
the fact that the plaintiff is not entitled to any relief
for the reasons herein stated.' *Hechavarria-
Castellano v. United States Immigration and
Naturalization Service,* Civil No. II-84-498 (D. Conn.
January 9, 1985) (Recommended Ruling and Order),
n.1.

The court adheres to the reasoning in the prior
Recommended Ruling. We now expressly hold that
which we addressed by footnote in our prior Ruling;
that is, lack of representation in this matter does not
alter the fact that the plaintiff is entitled to no relief.
*See* Recommended Ruling at 2-4. The plaintiff's
complaint is DISMISSED.

> FN1.  Although plaintiff entitled this
> pleading 'Objection to the Judge Hearing the
> Case as to the Pleadings', we treat it as a
> motion to reconsider our prior
> Recommended Ruling.

RECOMMENDED RULING AND ORDER

F. OWEN EAGAN, United States Magistrate.

Plaintiff a prisoner at the Connecticut Correctional
Institution at Somers,  (hereinafter referred to as
CCIS), brought this action *pro se* [FN1] and *in forma
pauperis* against the Immigration and Naturalization
Service (hereinafter referred to as INS) because of a
detainer it has lodged with the institution. He invokes
the jurisdiction of this court pursuant to 42 U.S.C. ¶
1983 and 8 U.S.C. ¶1255.

Plaintiff, a Cuban national who came to the United
States in 1980, is serving a 10-20 year sentence for a
Rhode Island burglary conviction. The detainer
lodged by the INS informs the warden of CCIS that
'an investigation has been initiated to determine
whether [plaintiff] is subject to deportation from the
U.S.' Plaintiff contends that the detainer adversely
affects his opportunity to participate in rehabilitative
programs and also 'threatens deportation proceeding
against him.' He asks the court to remove the detainer,
restrain the INS from deporting him, and declare him
a permanent resident of the United States under
authority of the Cuban Adjustment Act of 1966.

\*2 The Civil Rights Act, 42 U.S.C. § 1983 is

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

wrongfully invoked by the plaintiff. In order to state a claim for relief under Section 1983, plaintiff must allege deprivation of a federally protected right "under color of state law." The Immigration and Naturalization Service is an agency of the United States government and thus, is not subject to § 1983 lawsuits. The proper action to bring when challenging a detainer would be a petition for a writ of habeas corpus. See 28 U.S.C. § 2241 *et seq.* However, habeas corpus relief is available only if the respondent, here the INS, has actual custody of the plaintiff. No matter how far the concept of custody has been expanded, *Hensley v. Municipal Ct.* 411 U.S. 345 (1973), it is well settled in this district that the INS detainer does not subject the plaintiff to its custody. He is presently in custody of the warden at CCIS and would not be in INS custody pending investigation of deportability until after release from his present incarceration, if at all. See 8 U.S.C. § 1252 *et seq. Accord, Lehder v. Smith,* Civ. No. B-75-8 (D.Conn. Feb. 10, 1975); *Yuksel v. INS,* Civ. No. B-81-470 (D.Conn. Nov. 19, 1981); *Martinez v. INS,* Civ. No. B-81-515 (D.Conn. Nov. 30, 1981).

Plaintiff also wrongfully invokes 8 U.S.C. § 1255 as authority for this court to upgrade his alien status to that of permanent resident. 8 U.S.C. § 1255 states in pertinent part: "Adjustment of status. (a) the status of an alien ... may be adjusted by the *Attorney General,* to that of an alien lawfully admitted for permanent residence if, (1) the alien makes an application for such adjustment." (emphasis added) Any application for adjustment of immigrant status must first be made to the Immigration and Naturalization Service, which, as an agency of the United States Department of Justice, is headed by the Attorney General. If the plaintiff believes that he is entitled to permanent residence status under the Cuban Adjustment Act of 1966, he must first bring his claim to the Immigration and Naturalization Service. Judicial review of an immigration matter is not available until the plaintiff has exhausted its administrative remedies. Plaintiff makes no allegation that he has even applied to the INS for adjustment of status and thus, his action in this court is premature.

Plaintiff also asks the court to prevent him from being deported. The detainer which he attached to this complaint as an exhibit alleges only that he is subject to "an investigation" to determine his deportability. There is no evidence that he has been ordered deported, or ever been a party to deportation proceedings. Judicial review of deportation matters lies only after the entry of a final deportation order. See 8 U.S.C. § 1105a. Accordingly, the court is without jurisdiction in this matter.

Finally, plaintiff contends that the presence of the INS detainer adversely affects his ability to participate in rehabilitative programs. In *Rinaldi v. United States,* 484 F.Supp. 916, 917 (S.D.N.Y.1977), the court held that if anyone is liable for a prisoner's inability to participate in rehabilitative programs because of an immigration detainer, it is the state and not the INS. See also *Moody v. Daggett,* 429 U.S. 78 (1976). It is the decision of the state correctional institution whether the plaintiff may partake of a particular program and not the INS.

*3 Plaintiff fails to state any claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6) and therefore, his complaint is dismissed.

The defendant has asked for an award of costs. This court in its discretion declines to make such an award. See 28 U.S.C. § 1915(e) ("judgment may be rendered for costs [in proceedings *in forma pauperis* ] at the conclusion of the suit or action as in other cases.")

> FN1. Legal Assistance to Prisoners was appointed to represent the plaintiff, but no appearance was ever entered in his behalf. Plaintiff attempted to file several pro se motions but they were returned without filing by the clerk's office because counsel had been appointed for him. While there may be a question as to plaintiff's actual representation here, this matter does not affect the fact that the plaintiff is not entitled to any relief for the reasons herein stated.

1985 WL 6439, 1985 WL 6439 (D.Conn.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT E

1998 WL 106239                                                    Page 10
(Cite as: 1998 WL 106239 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Serguei ANDRIIANOV, Petitioner,
v.
Doris MEISNER, Commissioner, U.S. Department
of Justice, Immigration and
Naturalization Services, Respondent.

No. 97-CV-781 (RSP/GJD).

March 3, 1998.

Serguei Andriianov, Adirondack Correctional
Facility, Ray Brook, for Petitioner pro se.

Thomas J. Maroney, United States Attorney,
Attorney for Respondent, Albany, Thomas Spina, Jr.,
Esq., Assistant United States Attorney, of Counsel.

## ORDER

POOLER, D.J.

*1 Petitioner Serguei Andriianov filed timely
objections to a report- recommendation in which
Magistrate Judge Gustave J. Di Bianco recommended
that I dismiss Andriianov's habeas corpus petition.

Andriianov is a prisoner in the custody of the New
York State Department of Correctional Services
("DOCS") and a native and citizen of Russia.    On
February 26, 1997, an immigration judge ordered
Andriianov deported to Czechoslovakia.    In the event
that Czechoslovakia refused to accept Andriianov, the
immigration judge ordered his deportation to Russia.
On March 5, 1997, the New York Parole Board
denied Andriianov's request for parole but "authorize
[d] conditional parole for deportation only on or after
1/25/97 but no later than 11/97."

On June 2, 1997, Andriianov filed a petition for a
writ of habeas corpus in the Office of the Clerk of this
court.    Andriianov alleged that respondent Doris
Meisner, Commissioner of the United States
Immigration and Naturalization Service ("INS") had a
duty to secure his release in order to deport him.
Andriianov also argued that he gave up his right to
appeal the deportation order in order to obtain early
release, thereby obligating INS to deport him.

Respondent moved to dismiss Andriianov's petition.
INS explained that it was not willing to accept

Andriianov for deportation immediately because the
immigration judge had designated Czechoslovakia as
the country of deportation and Czechoslovakia no
longer exists.    INS requested that the immigration
judge changed the designated country from
Czechoslovakia to the Czech Republic and
represented that it would secure travel document
authorization from the Czech Republic once the
immigration judge amended his order.

In a report-recommendation filed October 7, 1997,
Magistrate Judge Di Bianco recommended dismissal
of Andriianov's habeas corpus petition because
Andriianov is not in INS custody.    The magistrate
judge also construed Andriianov's petition as a
request for a writ of mandamus compelling INS to
deport him and recommended that I deny mandamus
relief because Andriianov had no clear right to the
relief he sought.

Andriianov filed objections on October 22, 1997.    In
his objections, Andriianov notified the court that he
agreed to amendment of the order of deportation to
specify Russia as the country of deportation and that
the order was amended to provide for deportation to
Russia on September 8, 1997. Andriianov disagrees
with the magistrate judge's conclusion that this court
lacks jurisdiction to entertain his habeas petition and
argues that the "in custody" requirement is satisfied
by the fact that he is in the custody of DOCS. He also
argues that were it not for the fact that INS has filed a
detainer against him, he would be a free man today.
Finally, petitioner contends that he has a clear right to
deportation and therefore to a writ of mandamus.

## DISCUSSION

Because Andriianov filed objections, I review the
report-recommendation *de novo.*    28 U.S.C. §
636(b)(1)(C).    Andriianov's first argument fails
because he relies on his incarceration by DOCS and
DOCS is not a respondent in this proceeding.    The
magistrate judge correctly ruled that the existence of
an INS detainer did not fulfill the custody
requirement of 28 U.S .C. § 2241(c), which states that
"[t]he writ of habeas corpus shall not extend to a
petitioner unless--(1) [h]e is in custody under or by
color of the authority of the United States."    *See*
*Roldan v. Racette,* 984 F.2d 85, 88 (2d Cir.1993)
(collecting cases).    Moreover, Andriianov's assertion
that he would be a free man today were it not for the
INS detainer lacks factual support.    Andriianov was
denied parole except for conditional parole for
deportation and his conditional release date for other

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

purposes is July 25, 1998. Finally, the immigration judge's amendment of Andriianov's deportation order does not alter the conclusion that Andriianov has no clear right to deportation and therefore no right to a writ of mandamus. The applicable statute specifically provides that "[n]othing in this section shall be construed as requiring the Attorney General to effect the deportation of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined." 8 U.S.C. § 1252a(3)(B). Andriianov is still in DOCS custody. Therefore, it is

*2 ORDERED that the report-recommendation is approved; and it is further

ORDERED that Andriianov's petition is denied and dismissed; and it is further

ORDERED that the Clerk serve a copy of this order on the parties by ordinary mail.

DI BIANCO, Magistrate J.

REPORT-RECOMMENDATION

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Rosemary S. Pooler, United States District Judge pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).

The instant petition for habeas corpus relief was brought pursuant to 28 U.S.C. § 2254, requesting that the petitioner be immediately deported. Petitioner claims that the defendants are not affording him prompt deportation in violation of federal and state law.

Presently before the court is the respondents motion to dismiss the petition. Respondent has also submitted the declaration of James Grable, District Counsel for the Buffalo District of the Immigration and Naturalization Services (INS) at Buffalo, New York. For the following reasons, the undersigned agrees with the respondent and will recommend dismissal of the petition.

1. Facts

The petitioner is a native and citizen of Russia. He was admitted to the United States as a non-immigrant visitor for business on January 26, 1995. He was authorized to remain in the United States until April 25, 1995. On October 4, 1995, the petitioner was convicted in Supreme Court, Suffolk County, of Burglary, Second Degree. He was sentenced to one and one half to four and one half years incarceration. The petitioner is presently in the custody of the New York State Department of Correctional Services, serving his state sentence. *See* Grable Declaration at ¶¶ 3-5.

The Grable declaration further states that on July 12, 1996, the INS issued an order to show cause against petitioner, charging him with deportability due to the state conviction and the unauthorized length of stay in the United States. *Id.* at ¶ 6. Petitioner was afforded a deportation hearing before an Immigration Judge. The petitioner was found deportable, and ordered deported to Czechoslovakia, which was the country of deportation designated by the petitioner at the hearing, or to Russia, which was an alternate country designated by the Immigration Judge. *Id.* ¶ 7. The petitioner waived his right to appeal this decision.

In March of 1997, the New York State Parole Board granted the petitioner a Conditional Parole for Deportation Only (CPDO). Under the terms of the CPDO, the petitioner could be released from state custody *only* for purposes of deportation. *Id.* at ¶ 8. The INS does not accept custody of a deportable alien from the State until the alien is under a final order of deportation *and* the INS is prepared to immediately deport the alien. *Id.* at ¶ 9.

The INS is not prepared to deport the petitioner under the terms of the deportation order. The Grable declaration asserts that the designation of Czechoslovakia was erroneous, and the INS must attempt to substitute the Czech Republic as the designated country for deportation. If the Czech Republic will not accept the petitioner, the INS will seek authorization to deport the petitioner to Russia. *Id.* at 10. At that time, the INS will issue a warrant of deportation and will accept custody of the petitioner. In the interim, the INS has lodged a detainer against the petitioner at Adirondack Correctional Facility for the purpose of taking petitioner into custody when the appropriate authorizations are obtained. Until then, the petitioner will continue to serve his state sentence since his conditional parole was for purposes of deportation only. *Id.* at ¶¶ 11-12.

*3 The petitioner objects to this procedure and wishes that the court order the respondent to take custody of the petitioner to effect an immediate

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

deportation. Petitioner argues that his grant of parole entitles him to immediate INS custody and deportation. Petitioner further alleges that he waived his right to appeal because of this grant of parole and the belief that he would be immediately deported.

2. Jurisdiction

Respondent argues that the court does not have jurisdiction to entertain this petition because the INS does not have custody over petitioner. Before the court may grant a writ of habeas corpus, the petitioner must be in the custody of respondent. 28 U.S.C. § 2241(c) . [FN1] The Second Circuit has held that an INS detainer is merely a *notice* that *future* INS custody will be sought at the time of deportation. *Roldan v. Racette,* 984 F.2d 85, 88 (2d Cir.1993). *See also Deutsch v. United States,* 943 F.Supp. 276, 278-79 (W.D.N.Y.1996). Thus, the petitioner in the instant case is *not* in INS custody at this time. He is still serving his state court sentence while awaiting the authorization from the appropriate country of deportation. Because he is not in custody of the respondent, the court has no jurisdiction over a petition for habeas corpus.

> FN1. The petitioner wrote his petition for habeas corpus on a form for challenges to state custody under 28 U.S.C. § 2254. Because the petitioner is challenging alleged federal custody, the appropriate section is 2241. The undersigned will assume that the petitioner has made the appropriate request.

3. Mandamus

Given the liberality with which pro se pleadings are treated, the undersigned could interpret this petition as one for mandamus, requesting that the court order the respondent to immediately deport the petitioner. An action for writ of mandamus seeks to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. A writ of mandamus, however, is only available where the petitioner has a *clear right* to the relief sought, the respondent has a defined and preemptory duty to act, and there is no other available adequate remedy. *Deutsch,* 943 F.Supp. at 279.

As authority for his request, the petitioner cites 28 U.S.C. § 1252, dealing with expedited deportation of aliens convicted of felonies. First the court would note that due to changes in the immigration laws, the

section that petitioner relies upon has been extensively amended. The prior section dealing with deportation of felons was section 1252(h). However, there is a new section, completely devoted to the expedited deportation of aliens convicted of aggravated felonies. 28 U.S.C. § 1252a.

The new section is clear in its language. Section 1252a(a)(3)(A) provides that the Attorney General shall provide for the initiation and *to the extent possible,* the completion of deportation proceedings ... prior to the alien's release from incarceration. The subsection that immediately follows provides that nothing in the law shall be construed as requiring the Attorney General to effect the deportation of any alien sentenced to actual incarceration prior to the alien's release from custody for the felony. *Id.* § 1252a(a)(3)(B).

*4 The petitioner in the instant case is still serving his state sentence. Petitioner argues that his CPDO entitles him to release from state custody and immediate deportation. A review of petitioner's own documents does not support this assertion. [FN2] Petitioner's Exhibit D is a copy of the CPDO decision. The document indicates that the maximum expiration date of his state sentence is January 25, 2000. Petitioner's Exhibit D at 2. The petitioner's conditional release date is July 25, 1998. His parole was *denied,* with conditional parole for deportation only. *Id.* at 1. Since the INS is not ready to deport the petitioner, he cannot be released to the INS because release would have to be for deportation only.

> FN2. The petitioner has attached the documents relative to his deportation as exhibits to his memorandum in support of the habeas petition. (Docket # 2).

Therefore, the petitioner has no absolute right either to be released from state custody or to be immediately deported. Even if this court were to construe this petition as one for mandamus, the petitioner does not meet the requirements for mandamus, and the petition may not succeed.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the petition be DENIED and DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such

1998 WL 106239
**(Cite as: 1998 WL 106239, \*4 (N.D.N.Y.))**

objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

1998 WL 106239, 1998 WL 106239 (N.D.N.Y.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT F

Slip Copy                                                        Page 1
(Cite as: 2002 WL 1359671 (D.Conn.))

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

**Esther Benyah PICKETT, Petitioner,**
v.
**IMMIGRATION AND NATURALIZATION
SERVICE, Respondent.**

**No. 3:02CV622(JBA).**

June 19, 2002.

Ruling on Petition for Writ of Habeas Corpus [Doc. #
2]

ARTERTON, J.

*1 Petitioner Esther Pickett seeks a writ of habeas
corpus under 28 U.S.C. § 2241, requesting relief from
a final order of deportation. For the reasons set out
below, Pickett's petition is DISMISSED for lack of
subject matter jurisdiction.

I. Factual and Procedural Background

Pickett, a native and citizen of Liberia, pled guilty on
December 6, 1999 to a charge of Conspiracy to
Possess with Intent to Distribute Heroin, in violation
of 21 U.S.C. §§ 846 & 841(a)(1), and was sentenced
to two years imprisonment and two years supervised
release on March 16, 2000. *See* Judgment in a
Criminal Case, *United States v. Pickett,* No.
99-261(2)(DSD) (D.Minn. March 16, 2000) (Ex. B to
Govt's Response). On January 30, 2001, the
Immigration and Naturalization Service ("INS")
instituted removal proceedings against Pickett, *see*
Notice to Appear, *In the Matter of Pickett,* No. A29
810 457 (Jan. 30, 2001) (Ex. A to Govt's Response),
and a hearing before an Immigration Judge ("IJ") was
held, at which Pickett was represented by counsel.

At the hearing, Pickett requested asylum,
withholding of removal, and relief under the
Convention Against Torture ("Torture Convention").
[FN1] Transcript of Removal Hearing (Ex. D to
Govt's Response) ("Tr.") 6. Due to her conviction,
however, her attorney conceded that asylum was not a
possibility. Tr. 36. Pickett testified that she was born
in Firestone, Liberia, and first entered the United
States in 1979. Tr. 41. She last entered the United
States in 1992, and since that time, she has not
departed. *Id.* Pickett described the civil war in
Liberia, and explained the President Doe had been

killed by Charles Taylor, the current president. Tr.
43. She explained that the civil war is still in
progress. Tr. 43-44.

> FN1. Convention against torture and other
> cruel, inhuman or degrading treatment or
> punishment, 23 I.L.M. 1027 (1984), as
> modified 24 I.L.M. 535 (1985); adopted by
> the U.N. General Assembly Dec. 10, 1984,
> entered into force June 26, 1987, ratified by
> United States Oct. 21, 1994, 34 I.L.M. 590,
> 591 (1995), and entered into force for the
> U.S. Nov. 20, 1994. Article 3 of the
> Convention provides: "No State Party shall
> ... extradite a person to another State where
> there are substantial grounds for believing
> that he would be in danger of being
> subjected to torture."

Pickett testified that in the 1970s she married a man,
Nathaniel Jeffries, who was instead supposed to
marry President Doe's niece with whom he (Jeffries)
has a child. Tr. 45. As a result of Jeffries choosing
her over Doe's niece, Pickett claims that Doe rebels
killed her brother and burned their house down. Tr.
46. She testified that because of her marriage to
Jeffries, the Doe rebels burned down her entire
village. Tr. 52. Additionally, Pickett testified that she
and Doe's niece fought. Tr. 49.

Pickett testified further about the current situation in
Liberia, which includes infighting among ethnic
groups, rape, unequal treatment of women, and
female circumcision. Tr. 65-67. She also described
being forcibly subjected to female circumcision when
she was younger than age ten. Tr. 70. Pickett
described being a victim of domestic violence at the
hands of her husband, whom she divorced in 1995,
and who is now incarcerated in the United States. Tr.
72- 73. Finally, Pickett testified that Hairston Kayi,
the father of her twenty- four year old son and a
member of the Taylor administration, might attack
her because after her son was born, she left Kayi and
returned to Jeffries. Tr. 78.

*2 During cross examination and the examination by
the IJ, Pickett admitted that since 1980, she had
visited the United States perhaps twenty times or
more, and always returned to Liberia. Tr. 98-101. She
also visited Sierra Leone, Ghana and the Ivory Coast.
*Id.* She admitted that she has never been detained,
arrested, interrogated or imprisoned in Liberia, and
that Jeffries is currently in the United States serving a
five year prison term. Tr. 102. The IJ noted, and
Pickett agreed, that although Pickett married Jeffries

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

in 1972, President Doe was not in power until 1980. Tr. 107. Additionally, Doe was killed in 1990, and Charles Taylor then assumed power. Tr. 110.

On September 5, 2001, the IJ issued a final order of removal. Ex. M to Govt's Reply ("IJ Decision"). The IJ concluded that Pickett was subject to removal both based on a crime relating to a controlled substance and an aggravated felony based on a conviction for illicit trafficking in a controlled substance. *Id.* at 1-2. The IJ rejected Pickett's claim for withholding of removal under INA § 241(b)(3)(A) and for withholding of removal under the Torture Convention. As to Pickett's INA § 241(b)(3)(A) claim for withholding, the IJ concluded that her drug offense was a "particularly serious crime," *see* INA § 241(b)(3)(B)(ii); IJ Decision at 10, and in the alternative that she failed to establish that she would be singled out for persecution on any of the five enumerated grounds in the statute, *id.* at 12. The IJ noted the seriousness of a heroin trafficking operation, *id.* at 9, and even though Pickett was given a sentence reduction for being a minor participant, *id.* at 10, the IJ disbelieved Pickett's assertion that her participation in the heroin smuggling was a one-time occurrence, *id.* As to the IJ's alternative finding that Pickett had not shown she would be singled out for persecution on an INA § 241(b)(1) enumerated ground (race, religion, nationality, membership in a particular social group, or political opinion), the IJ followed the procedure set out in 8 C.F.R. § 208.16(b): first, the IJ concluded that there was insufficient evidence of past persecution, IJ Decision at 10-11, and then concluded that Pickett had failed to meet her burden of proving future persecution, *id.* at 12. The IJ noted that while there is evidence of significant violence in Liberia, including rape and other violence against women, "the evidence does not ... establish that all Liberian women have a well-founded fear of persecution or even a clear probability of persecution solely because of their gender." *Id.* at 13 (*citing Safaie v. INS,* 25 F.3d 636, 640 (8th Cir.1994)).

Finally, with respect to Pickett's claim for withholding under the Torture Convention, the IJ found that Pickett failed to establish that she would be singled out for persecution by the government of Liberia for torture. Tr. 14-15. The IJ noted that to qualify as "torture" under the Torture Convention, the activities "must be at the hands of individuals working on behalf of the government and that the respondent would [have to] be in the custody or control of government actors." Tr. 14; *see generally* 8 C.F.R. § 208.18(a).

*3 Pickett, still represented by counsel, appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA, with one member dissenting, affirmed the decision of the IJ and concluded that Pickett was ineligible for withholding of removal under § 241(b)(3)(A) or the Torture Convention. *See* Ex. N to Govt's Response. In a per curiam opinion, the panel concluded that the IJ "considered all relevant factors in reaching his conclusion and we agree with that conclusion." *Id.* at 1 (*citing Matter of LS,* Interim Decision 3386 (BIA 1999)). As to the IJ's conclusion that Pickett's heroin conviction was a particularly serious crime, the BIA noted that "the quantity of heroin involved in the trafficking scheme was substantial, as was the 2-year prison sentence respondent received for her role in the criminal enterprise." *Id.* The BIA agreed, as well, with the IJ's alternative holding that Pickett did not establish an adequate objective basis for her claimed fear of persecution in Libya. *Id.* at 1-2. Finally, as to Pickett's Torture Convention claim, the BIA found that Pickett's evidence "is insufficient to support an affirmative finding that she will likely be subject to government sponsored or sanctioned torture upon her return to Libya. *Id.* at 2. [FN2]

> FN2. The dissenting panel member disagreed that Pickett's drug conviction was "particularly serious," reasoning that the record did not support the IJ's view that the heroin conviction may not have been Pickett's first offense. *Id.* at 3-4. The dissent "would evaluate [Pickett's] claim under the standard for withholding, find that she met her burden and grant withholding," *id.* at 4. The dissent does not address why Pickett would nonetheless meet the requirements of INA § 241(b)(3)(A), despite the majority's affirmance of the IJ's alternative holding that Pickett had failed to prove eligibility for withholding under INA § 241(b)(3)(A).

The BIA's decision affirming the IJ's final order of removal was rendered on March 5, 2002. Pickett was precluded from petitioning the U.S. Court of Appeals for the Second Circuit for review under 8 U.S.C. §§ 1252(a)(1) & (b)(2) of INS's decision by virtue of her heroin conviction. 8 U.S.C. § 1252(a)(2)(C); *Calcano-Martinez v. INS,* 533 U.S. 348, 351-352 (2001). Less than thirty days after the BIA's decision, [FN3] Pickett, proceeding *pro se,* filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241. In her petition, she states that her children are United States citizens and would suffer irreparable harm should she be returned to Liberia, and that she

fears for her safety if she is returned, as Liberia is in a state of civil strife.

> FN3. The BIA's decision was issued on March 5, 2002, and Pickett's petition is postmarked April 3, 2002. As Pickett is in custody, any papers she submits are deemed filed as of the date she presents them to prison officials for mailing. *See Dory v. Ryan,* 999 F.2d 679, 681-682 (2d Cir.1993).

Pickett seeks relief under INA § 241(b)(3)(A) and the Torture Convention. [FN4] While the "Introduction" section of Pickett's petition states that she "brings this action of a writ of habeas corpus based upon a challenge to the constitutionality of an Immigration and Naturalization Act provision which extends potential asylum relief to certain illegal aliens whose country is in civil strife," she gives no precision as to what makes it unconstitutional and instead asserts her eligibility for relief under both the INA and the Torture Convention. Pickett also specifies that "[d]etention of individuals is an extraordinary power that should only be used in extraordinary circumstances" and that "the mandatory detention of immigrants who pose no threat to society is anathema to the protections of the constitution's due process clause." However, Pickett seeks withholding of removal under the INA § 241(b)(3)(A) and/or the Torture Convention, *see supra* note 3, not release from detention. [FN5]

> FN4. "Wherefore, petitioner respectfully prays this Court to: (a) Assume jurisdiction over this matter[; and] (b) Grant her asylum under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) and relief under the Convention that is country is currently in civil strife." While Pickett refers to "asylum" under INA § 241(b)(3)(A), that section only grants withholding of removal. Further, while Pickett uses only the word "Convention" (as opposed to "Convention Against Torture"), her claim is construed as meaning the Convention Against Torture, since that is the only convention that was at issue in the administrative process.

> FN5. Any challenge to the length of detention would be without merit, as the BIA's decision was issued March 5, 2002 and Pickett is scheduled to be removed June 29, 2002. Under *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001), there is a presumptively reasonable six month period for the detention pending deportation of criminal aliens. This six month period

began to run on March 5, 2002, when the issuance of the BIA's decision made the IJ's final order of deportation administratively final. *See* 8 U.S.C. § 1231(a)(1); *Zadvydas,* 533 U.S. at 683.

*4 In response to Pickett's § 2241 petition, the Government argues that because the Torture Convention was declared by the Senate to be a non-self- executing treaty and because of language in the implementing laws and regulations that the Government reads as precluding judicial review, the Court lacks subject matter jurisdiction to consider Pickett's Torture Convention claim. While preserving its jurisdictional argument, the Government also argues in the alternative that the record supports the BIA's and IJ's conclusion that Pickett is ineligible for withholding of removal.

II. Analysis

Although Pickett's heroin conviction precludes a petition for direct review of the final order of removal to the Second Circuit, 8 U.S.C. § 1252(a)(2)(C); *Calcano-Martinez v. INS,* 533 U.S. 348, 351-352 (2001), this Court retains jurisdiction under 28 U.S.C. § 2241 to hear some challenges to final orders of deportation. *INS v.. St. Cyr,* 533 U.S. 289, 314 (2001) . While "[t]he precise scope of such jurisdiction remains unclear[,]" *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001), the Second Circuit has held that "federal courts retain jurisdiction to review 'purely legal statutory and constitutional claims," ' *id. (quoting Calcano-Martinez v. INS,* 232 F.3d 328, 342 (2d Cir.2000), *aff'd,* 533 U.S. 348 (2001) and *citing Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998)).

Pickett's petition seeks review of the IJ's and BIA's decision that she does not qualify for relief from deportation: she asks the court to "[g]rant her [withholding] under [§ ] 241(b)(3)(A) [and] relief under the Convention [Against Torture]." While, as noted above, Pickett employs the word "constitutionality," she makes no further mention of a constitutional challenge and later asks for relief under these two sources of legal authority. Thus, the Court must determine the scope of its subject matter jurisdiction under § 2241 to examine the conclusion of the INS that Pickett is not eligible for withholding of removal under with § 241(b)(3)(A) or the Torture Convention.

In *Henderson v. INS,* 157 F.3d 106 (2d Cir.1998), the court heard the claims of three lawful permanent residents challenging the BIA's determination that the

Slip Copy
**(Cite as: 2002 WL 1359671, \*4 (D.Conn.))**

Page 4

1996 Amendments [FN6] to the Immigration and
Naturalization Act could be applied retroactively. The
court had before it both petitions for direct review
(appeals from BIA decisions directly to the Second
Circuit) and appeals from district court rulings on §
2241 petitions. Reaching the conclusion that the
Supreme Court in *St. Cyr* would later accept, the
*Henderson* court held that although the 1996
Amendments " 'repealed the jurisdiction a court of
appeals formerly had over petitions for review filed
by aliens convicted of certain criminal offenses," *id.*
at 112 (quoting *Hincapie-Nieto v. INS*, 92 F.3d 27,
28 (2d Cir.1996)), the 1996 Amendments "left
untouched the court's jurisdiction under the general
habeas statute," *id* (citing *Jean-Baptiste v. Reno*, 144
F.3d 212, 219-220 (2d Cir.1998) and *Hincapie-Nieto*,
92 F.3d at 31). The *Henderson* court then had to
determine whether the scope of § 2241 jurisdiction
extended to review of the two pending questions:
whether the 1996 Amendments' repeal of § 212(c)
relief was retroactive, and the legal standard for
determining length of lawful unrelinquished domicile.

> FN6. The 1996 Amendments are the various
> changes to the INA made by the
> Antiterrorism and Effective Death Penalty
> Act, Pub.L. No. 104-132, 110 Stat. 1214
> (1996) and the Illegal Immigration Reform
> and Immigrant Responsibility Act of 1996,
> Pub.L. No. 104-208, 110 Stat. 3009 (1996).

\*5 The *Henderson* court concluded that "the law
now is much like it was prior to the enactment of the
INA and is similar to that which existed under the
early statutes that were intended to make these
administrative determinations nonreviewable to the
fullest extent possible under the Constitution." *Id.* at
119 (citation and internal quotations omitted); *see
also St. Cyr*, 533 U.S. at 314 n. 38 (review under §
2241 is "considerably more limited than ... APA-style
review"). [FN7] Against this restrictive standard, the
*Henderson* court concluded that "the questions
presented by these aliens are properly within the
scope of the habeas corpus jurisdiction of the federal
courts, 157 F.3d at 120 (citing, inter alia, *Goncalves
v. Reno*, 144 F.3d 110, 125 (1st Cir.1998)), because
"[t]he questions presented by these aliens are one of
pure law" and the court was "not called upon in this
case to review the agency's factual findings or the
Attorney General's exercise of discretion," *id.* at 120
n. 10 (citation omitted).

> FN7. *Henderson* noted that prior to the
> enactment of the 1952 Immigration and
> Nationality Act, "judicial review of

immigration decisions proceeded solely by
way of the writ of habeas corpus," and that
the authority to grant such writs was
provided by the direct ancestor of § 2241.
157 F.3d at 112 and 112 n. 6. Construing
the immigration law applicable before the
1952 Act, the Supreme Court in *Heikkila v.
Barber*, 345 U.S. 229 (1953), concluded
that judicial intervention in deportation
cases was precluded except insofar as it was
required by the Constitution, *id.* at 235, and
that in exercising habeas review:

> the function of the courts has always been
> limited to the enforcement of due process
> requirements. To review those requirements
> under the Constitution, whatever the
> intermediate formulation of their
> constituents, is very different from applying
> a statutory standard of review, e.g., deciding
> 'on the whole record' whether there is
> substantial evidence to support
> administrative findings of fact....
> *Id.* at 236. The 1952 Act significantly
> broadened judicial review of deportation
> proceedings. *Henderson*, 157 F.3d at 116
> ("the scope of review of immigration
> decisions--particularly executive factual
> findings--was substantially broadened by
> the 1952 Act") (citations omitted).

This is not to say that every statutory claim that
an alien might raise is cognizable on habeas. But
those affecting the substantial rights of aliens of
the sort that the courts have securely enforced--in
the face of statutes seeking to limit judicial
jurisdiction to the fullest extent constitutionally
possible--surely are. The two statutory questions
before us today are clearly of this variety, and the
district courts had subject matter jurisdiction to
consider them.

*Id.* at 122.

The Second Circuit revisited the scope of § 2241
jurisdiction in *Sol v. INS*, 274 F.3d 648 (2d Cir.2001)
, which involved a petition for habeas review
following INS denial of relief under INA § 212(c).
While the 212(c) issue in *Henderson* and *St. Cyr* had
been whether, as a matter of statutory interpretation,
Congress's 1996 repeal of 212(c) relief had
retroactive effect, Sol's challenge arose after the INS
had considered him for 212(c) relief but denied that
relief. [FN8] The *Sol* court determined that § 2241
review does not extend to "discretionary
determinations by the IJ and the BIA," *id.* at 651, and
concluded that the district court lacked subject matter
jurisdiction over Sol's § 2241 petition:

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FN8. The Second Circuit's opinion does not make explicit the grounds for the INS's denial. It notes that "[u]nder Section 212(c) of the INA, the Attorney General had broad discretion to waive the deportation of any criminal alien who demonstrated that he or she had maintained a lawful domicile in the United States for at least seven years and who had not been convicted of an 'aggravated felony' for which he or she served a term of imprisonment of five years or longer. *Id.* at 649 n. 3 (*citing* 8 U.S.C. § 1182(c) (1994) (now repealed)). The opinion noted that Sol "has had several convictions" and that at the hearing in which 212(c) relief was initially considered, "the [IJ] heard testimony from Sol and other witnesses and considered Sol's record of criminal convictions." *Id.* at 649. However, given the court's later statement in the discussion portion of the opinion that "Sol ... does not raise a statutory or constitutional claim [but instead] simply contends that the decisions of the IJ and BIA lacked legal support," *id.* at 651, it is fair to conclude that Sol was challenging the discretionary decision to deny 212(c) relief rather than a conclusion that his convictions rendered him ineligible for such relief.

Sol ... does not raise a statutory or constitutional claim. He simply contends that the decisions of the BIA lacked adequate support in the record. While review of purely legal issues does not necessitate reconsideration of "the agency's factual findings or the Attorney General's exercise of her discretion," review of the merits of Sol's petition would involve precisely such reassessment of the evidence. *Henderson,* 157 F.3d at 120 n. 10 (*citing Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir.1998)). This sort of fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors.

*Id.*

The Second Circuit's most recent discussion of the scope of immigration habeas review is found in *Liu v. INS,* No. 01-2153, 2002 WL 1174385 (2d Cir. June 4, 2002). There, the *pro se* alien petitioned for a writ of habeas corpus under § 2241, alleging "that the government violated her rights under the Due Process Clause and the Equal Protection Clause in connection with her removal proceedings." *Id.* at *4. While the key issue in the case was whether § 2241 remained available for non-criminal aliens (an issue not present in Pickett's case, as Pickett is a criminal alien), *Liu* is relevant because it speaks to the scope of issues cognizable in a § 2241 proceeding. The court held that § 2241 afforded the district court jurisdiction to hear Liu's claims of constitutional violation in the manner in which the INS proceedings were undertaken:

*6 We [emphasize] that here, as in *Chmakov [v. Blackman,* 266 F.3d 210 (3d Cir.2001) ], Liu's petition must not be construed to be 'seeking review of any discretionary decision made by the Attorney General,' *see* 266 F.3d at 215. The INA, as amended, plainly prohibits such review. *See* 8 U.S.C. § 1252(g) ('[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action or action by the Attorney General to [inter alia] execute removal orders....); *Reno v. American-Arab-Anti-Discrimination Comm.,* 525 U.S. 471, 482-484 (1999) (construing § 1252(g)). But insofar as Liu challenges the constitutionality or 'legality of the BIA's decision dismissing [her] claim for asylum and entering a removal order against her, *Chmakov,* 266 F.3d at 215, her petition 'raises a pure question of law," St. Cyr, 533 U.S. at 298, cognizable on collateral review. See Heikkila[, 345 U.S. at 235-236] (distinguishing judicial review from habeas corpus review and emphasizing that the latter 'has always been limited to the enforcement of due process requirements")....

*Id.*

*Liu* must be read so as not to eviscerate the distinction between APA-style review and a habeas proceeding, [FN9] and prior case law applied to the allegations at issue in *Liu* gives context to the *Liu* court's conclusion that challenges to the legality of the BIA's decision dismissing a claim for asylum are pure questions of law cognizable on habeas. *Henderson* holds that a court's jurisdiction to review executive deportation decisions has been scaled back to pre-1952 terms, 157 F.3d at 119-120, and notes that under the finality provisions of the pre-1952 immigration laws, the Supreme Court repeatedly held that " 'the conclusiveness of the decisions of immigration officers ... is conclusiveness upon matters of fact," ' *id.* at 115 (*quoting Gegiow v. Uhl,* 239 U.S. 3, 9 (1915)). [FN10] *St. Cyr* noted that in a pre-1952 habeas action challenging the legality of a deportation order, "other than the question whether there was some evidence to support the order, the courts generally did not review factual determinations made by the Executive." 533 U.S. at 306 (citations omitted).

FN9. For example, assume the INS determines, after weighing the evidence obtained in a hearing with proper procedural safeguards, that an alien is ineligible for asylum because while there is some evidence supporting the alien's claim, the IJ

determines that the alien has failed to carry her burden of proof that she suffered past persecution or has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13 (setting out eligibility for asylum). If the INS's subsequent decision, based solely on the sufficiency of the evidence at the properly-conducted hearing, to dismiss the application for asylum and enter an order of removal is a "pure question of law" cognizable on habeas, then the federal court deciding whether to issue the writ would be obliged to engage in APA-style determinations as to whether there was substantial evidence on the record or whether the IJ abused his discretion in choosing to credit some testimony over other testimony.

FN10. *See also id.* at 112-116 (summarizing judicial review of immigration cases from 1885 through 1952).

Similarly, the facts of *Liu* belie any notion that habeas review extends to APA-style scrutiny of factual determinations. While the court said only that Liu alleged "that the government violated her rights under the Due Process Clause and the Equal Protection Clause in connection with her removal proceedings," 2002 WL 1174385 at *4, claimed constitutional violations are pure issues of law. If Liu challenged the process employed in the INS's determination (i.e., a claim of lack of counsel or inability to understand the nature of the charges such that an adequate defense could be prepared), *Heikkila* makes clear that such due process concerns are the province of habeas review. 345 U.S. at 236 ("the function of the courts [on habeas] has always been limited to the enforcement of due process requirements"). If Liu's claim of constitutional violation was an assertion that the INS's determination was based on a complete absence of any evidence in the record such that the decision was wholly arbitrary and constituted a denial of due process, such a claim would also be cognizable under § 2241 review. *See United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106 (1927) ("Deportation ... on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus.") (*citing Chin Yow v. United States,* 208 U.S. 8 (1908) and *Kwock Jan Fat v. White,* 253 U.S. 454 (1920)); *see also Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 455 (1985) ("In a variety of contexts, the [Supreme] Court has recognized that a governmental decision resulting in

the loss of an important liberty interest violates due process if the decision is not supported by any evidence.") (citations omitted). [FN11]

FN11. The facts of *Chmakov,* the Third Circuit case upon which *Liu* heavily relies, are also insufficiently broad to support a conclusion that an APA-style challenge to the INS's decision is a pure question of law cognizable on habeas. The Chmakovs, too, alleged a violation of their constitutional right to due process of law. 266 F.3d at 213 ("The petition alleged that the Chmakovs' Fifth Amendment right to due process had been violated because they received ineffective assistance of counsel before the BIA.").

*7 Taken together, *Henderson, Sol, St. Cyr* and *Liu* stand for the proposition that in order to support subject matter jurisdiction, a § 2241 challenge to a final order of deportation must be more than an APA-style challenge to the sufficiency of the evidence. Pickett's petition fails to advance any allegation sufficient to support § 2241 jurisdiction, as she has advanced no colorable pure issue of law. The record reflects that Pickett was afforded a hearing at which she was represented by counsel, testified and called witnesses on her behalf. She makes no claim that improper evidence was admitted or proper evidence was excluded, that counsel's representation was deficient, that there was no evidence to support the IJ's decision or any claim of bias or arbitrary behavior by the INS.

The Court thus lacks subject matter jurisdiction [FN12] over Pickett's petition for a writ of habeas corpus. Because the Court lacks subject matter jurisdiction it is unnecessary to address the Government's alternative jurisdictional argument based on the Torture Convention's non-self-executing status.

FN12. *See Sol,* 274 F.3d at 651-652 (district court lacked subject matter jurisdiction over § 2241 petition that sought prohibited level of review); *Liu,* 2002 WL 1174385 at *4 (district court had subject matter jurisdiction when petition raised a pure question of law)

III. Conclusion

For the reasons set out above, Pickett's petition [Doc. # 2] is DISMISSED for lack of subject matter jurisdiction. The Government advises that Pickett's

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Slip Copy
**(Cite as: 2002 WL 1359671, \*7 (D.Conn.))**

deportation is scheduled for June 29, 2002, and no order staying deportation is in effect. Thus, any motion for stay must be directed to the U.S. Court of Appeals for the Second Circuit. No Certificate of Appealability is required. *Murphy v. United States,* 199 F.3d 599, 601 n. 2 (2d Cir.1999).

The Clerk is directed to close this case.

2002 WL 1359671 (D.Conn.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

20. Have you or any member of y ..... amily ever belonged to or been, as .... ed with any organizations or groups your home country ( *i.e., a politica     , student group, union, religious organizatio.     .tary or para-military group, civil patrol, guerri organization, ethnic group, human rights group, or the press)?*

☐No ☒ Yes  *(If yes, provide the following information relating to each organization or group:  Name of organization or group, dates of membership or affiliation, purpose of the organization, what, if any, you or your relative's duties or responsibilities were, and whether you are still an active member.)*

My family was and continues to be devout Catholics.

---

21. Have you or any member of your family, ever been mistreated/threatened by the authorities of your home country by a group (s) controlled by the government, or by a group(s) which the government of your home country is unable unwilling to control?

☐No  ☒ Yes. If yes, was it mistreatment or threat because of:

☐Race  ☒ Religion  ☐ Nationality  ☐ Membership in a particular social group  ☒Political opinion  ☐Other

*(Specify for each instance: your relationship,  what occurred and the circumstances, date, exact location, who took such action against you,  wh was his/her position in the government or group,  reason why the incident occurred, names and addresses of a few of the people who may have witnessed these actions and who could verify these statements. Attach documents referring to these incidents, if available; attach additional sheets as needed.)*

I have been both mistreated and threatened by the authorities for my religious affiliatio
I have also been targeted for persecution for my stance on the Chernobyl disaster.

---

22. Have you or any member of your family, ever been:   ☒ Arrested     ☒ Detained  ☒ Interrogated

☐ Convicted and sentenced   ☒ Imprisoned in your country, any other country, or in the U.S.?

☐No  ☐ Yes   *(If yes, specify for each instance: What occurred and the circumstances, dates, location, duration of the detention or imprisonment, reason for the detention or conviction, treatment during detention or imprisonment, what formal charges wer: placed against you, reason for the release,  treatment after release, names and addresses of a few of the people  who could veri these statements. Attach documents  referring to these incidents, if any.)*

I have been detained and interrogated first because of my religious activities and later because of my participation in anti-Chernobyl gatherings and demonstrations.  Please see my enclosed affidavit for more complete and detailed information.

23.    Have you applied for asylum in ...S. before?

☒ No    ☐ Yes (Date_____ INS office_____ Results - Granted/Denied)

## PART D - OTHER INFORMATION

24.    Have you traveled to the United States before?  How many times?_____

☒ No    ☐ Yes (If so, give date, purpose and duration of trip.)

25.    List all current travel or identity documents in your possession such as national passport, refugee convention travel document, safe conduct, or national identity card:

| Document type | Document number | Issuing country or authority | Date of issue | Date of expiration |
|---|---|---|---|---|
| Passport | 019982 | USSR | 1/17/90 | 1/7/95 |
| | | | | |
| | | | | |

| 26.    Date of departure from your country of nationality (Mo./Day/Yr.) | 27.    Was exit permission required to leave your country? |
|---|---|
| 9/3/90 | ☐ No   ☒ Yes (If yes, obtained by whom)  Myself |

28.    After leaving your home country, did you travel through or reside in any other country before entering the U.S.?

☒ No    ☐ Yes (If yes, identify each country, length of stay, purpose of stay, address, reason for leaving, and whether you are entitled and willing to return to that country for residence purposes.)

29.    Have you returned to your country of claimed persecution since your departure? How many times?_____

☒ No    ☐ Yes (If so, give date, purpose and duration of trip.)

30.    Have you applied for asylum or refugee status in any other country?

☒ No    ☐ Yes (Date_____ Country_____ Results - Granted/Denied)

31.    Have you been recognized as a refugee by another country or by the United Nations High Commissioner for Refuge

☐ No    ☒ Yes (If yes, Date_____ Country_____ )

Ukrainian Catholics have been designated a refugee group by the UNHCR.

32. Have you ever caused harm or suffering to any person because of his/her race, religion, nationality, membership in a particular social group or political union or orders or assisted in such

☒ No  ☐ Yes *(If yes, describe nature of* ... *dents and your own involvement.)*

33. Please provide any additional statement relevant to your case.

    Please see my enclosed personal affidavit for a complete and detailed explanation of my
    particular situation.

## PART E - SIGNATURE

Under penalty of perjury, I declare that the above and all accompanying documents are true and correct to the best of my knowledge and belief.

_____               1-20-93yn
Signature of applicant                                    Date

### Signature of person preparing form if other than above:

I declare that this document was prepared by me at the request of the applicant and is based on information provided by the applicant.

Print Name  Roxanne C. Hladylowycz          Address  INTERNATIONAL INSTITUTE OF N.J.
                                                       880 BERGEN AVENUE
Signature  Roxanne C. Hladylowycz  Date  1/20/93   JERSEY CITY, NEW JERSEY 07306
                                                       (201) 653-3888 OLAG #

Applicant is not to sign the application below until he or she appears before an Asylum Officer of the Immigration and Naturalization Service for examination. I _____ swear (affirm) that I know the contents of this application that I am signing including the attached documents; that they are true to the best of my knowledge; and that corrections numbered ( ) to ( ) were made by me or at my request and that I signed this application with my full, true name:

_____
(Complete and true signature of applicant)

Signed and sworn to before me by the above-named applicant at _____ on _____
                                                                      (Month)   (Day)    (Year)

_____
(Signature and title of interviewing officer)

# EXHIBIT 3

## *U.S. Immigration & Naturalization Service*

*Asylum Office*
*1200 Wall Street West, 4th Floor*
*Lyndhurst, New Jersey 07071*

Vladimir GRIGOUS
141 Case Street
West Granby, CT 06090

Date: _____ June 12, 1997 _____

File #: _____ A70 583 407 _____

### Referral Notice

Dear Mr. GRIGOUS:

This letter refers to your Request for Asylum in the United States (Form I-589). Applicants for asylum must credibly establish that they have suffered past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; and that they merit a grant of asylum in the exercise of discretion.

For the reason(s) indicated below, we have not granted your claim for asylum:

1. ☐   You failed to appear for your scheduled asylum interview, or failed to provide a competent interpreter, and did not show good cause.

2. ☐   You have not established that you are a refugee because:

    A.   Past Persecution

        ☐   You did not describe any instances of suffering harm in the past.

        ☐   You have not established that any harm you experienced in the past, considering incidents both individually and cumulatively, amounts to persecution.

        ☐   You have not established that any harm you experienced in the past is on account of one of the protected characteristics in the refugee definition (race, religion, nationality, membership in a particular social group, or political opinion).

**AND**

    B.   Future Persecution

        ☐   You have not expressed a fear of future persecution.

        ☐   You have not established that there is a reasonable possibility you would

suffer persecution in the future.

☐ You have not established that any future harm you fear is on account of one of the protected characteristics in the refugee definition (race, religion, nationality, membership in a particular social group, or political opinion).

☐ You have not established that the persecution you fear in the future exists throughout your country (or, if stateless, country of last habitual residence) or that it would be unreasonable for you to relocate within that country to avoid future persecution.

☐ , You have not established that your fear of future persecution is well-founded, because you have not shown that your government is unable or unwilling to protect you from the harm you fear.

3. ☐ Although the evidence indicates that you are a refugee because you were persecuted in the past on account of a protected characteristic in the refugee definition, the INS has referred your request as a matter of discretion because:

☐ A preponderance of the evidence establishes that country conditions have changed to such an extent that you do not have a well-founded fear of future persecution,

☐ A preponderance of the evidence establishes that, in your particular case, there is not a reasonable possibility you would suffer persecution if you were to return to your country (or, if stateless, country of last habitual residence),

☐ A preponderance of the evidence establishes that the threat of persecution you fear does not exist country-wide and it would be reasonable for you to relocate within your country (or, if stateless, country of last habitual residence) to avoid future persecution,

and there are no compelling reasons arising from the severity of the past persecution or other compelling humanitarian reasons to grant asylum in the absence of a well-founded fear of future persecution.

4. ☐ You are barred by statute from a grant of asylum for the following reason(s):

☐ You were convicted of an aggravated felony or other particularly serious crime.

☐ There are serious reasons for believing that you committed a serious nonpolitical crime outside the United States before you came to the United States. (Applies only to applicants who applied for asylum on

2

or after April 1, 1997.)

☐ There are reasonable grounds for regarding you as a danger to the security of the United States.

☐ Evidence indicates that

☐ you have engaged in terrorist activity.

☐ you are engaged in or are likely to engage in terrorist activity.

☐ you are a representative of an organization that has been designated by the Secretary of State as a foreign terrorist organization.

☐ you have incited terrorist activity. (Applies only to applicants who applied for asylum on or after April 1, 1997.)

☐ Evidence indicates that you ordered, incited, assisted, or otherwise participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion, and you failed to establish by a preponderance of the evidence that you did not.

☐ You were firmly resettled in a third country.

☐ You were previously denied asylum in the United States by an Immigration Judge or the Board of Immigration Appeals and you failed to demonstrate the existence of changed circumstances that materially affect your eligibility for asylum. (Applies only to applicants who applied for asylum on or after April 1, 1997.)

5. ☐ You are a citizen or national of another country in addition to the country of persecution, and you have not established that you were persecuted or have a well-founded fear of persecution on account of a protected ground in that other country.

6. ☑ After careful consideration of all available information and explanations at your asylum interview, your claim was deemed not credible on the basis of:

☑ Material inconsistency(ies) between your testimony and application and/or other evidence

☐ Material inconsistency(ies) within your testimony

☑ Material inconsistency(ies) with country conditions information

☑ Lack of detail(s) on material points

3

Brief Explanation: _____

_____

_____

_____

7. ☐ Other Reason for Referral:

_____

_____

_____

Based on the above reasons(s), your case has been referred to an immigration judge. **This is not a denial of your asylum application.** You may request asylum again before an immigration judge and your request will be considered (without additional refiling) when you appear before an immigration judge at the date and time listed on the attached charging document. The determinations that we have made in referring your application are not binding on the immigration judge, who will evaluate your claim anew.

Sincerely,

*M. Wallesh*

Susan Dibbins,
Acting Director,
Newark Asylum Office                                            (Rev. 3/31/97)

4

## ASSESSMENT/REFERRAL MEMO

| | | | |
|---|---|---|---|
| ZNK061 | Officer Name: | C.J. Bagley | June 12, 1997 |
| Applicant's Name: | GRIGOUS, Vladimir | File Number: | A70 583 407 |
| Supervisor:    Marva McAllister | | Concur:  Yes ☑   No ☐ | |

Applicant indicated that he is a married, male, 40-year-old native and citizen of Ukraine, who entered the United States on September 3, 1990 at New York, NY and was admitted as a visitor for pleasure (B2) .

Applicant believes he will be persecuted by the KGB on account of religion and political opinion.

Applicant testified that he was aware and understood the contents of his application for asylum. The applicant stated that the contents of his application was discussed in the Ukrainian language. The applicant stated that he and his family were able to attended church and practice Catholicism without harm prior to him departing the Ukraine September 1990. The applicant testified that after he completed Army service he held a job for 11 years beginning in 1978 doing refrigeration, electrical and alarm work. He stated that his employer attempted to send him to rebuild stores near the Chernobyl district sometimes in 1986 or 1987. The applicant stated that he was not ever fired from his job for refusal; however, he was demoted from being a manager but did not lose salary as a result of the job change. The applicant stated that he and approximately 200 other concerned citizens protested against the Chernobyl incident. The applicant stated that he was arrested by the local police, and released on the same day. The applicant stated that maybe he was arrested and released five times. The applicant stated that he started his own taxi business during 1989 and 1990. The applicant stated that he and his wife told the Consular official in Moscow that they wanted to come to the United States on vacation to visit family members. He stated that his wife's cousin was in the United States. He stated that his grandmother sent a letter to the United States requesting their sponsorship. He stated that he received a letter of invitation in 1989. The applicant stated that his wife came to the United States with him on September 3, 1990, stayed 4 or 5 months and returned to the Ukraine. He stated that his wife and two children live at an address he has maintained since 1984. The applicant stated that he did not believe that he could build a life in the Ukraine.

The applicant presented testimony which was deemed not credible. The applicant based his application for asylum on two grounds, the Catholic religion and political opinion. The applicant's application indicated acts of discrimination that existed through his adolescence. Current country conditions for the Ukraine have changed. According to the DOS Report on practices for 1996, the new Constitution adopted in June 1996, and the 1991 law on Freedom of Conscious and Religion provide for separation of church and state and permit religious organizations to establish places of worship and train clergy. It indicates that the Government

respects these rights in practice.  With regard to political opinion, the applicant stated that he participated in a protest along with approximately 200 others in his community ( a small minority) in Ternopil.  The applicant was not able to substantiate having attended meetings and demonstrations as stated in his application (see paragraphs 22 and 24 of his affidavit).  He could not discuss when they were held, their location, agenda, etc.  The applicant's application indicated in paragraph 27 of his affidavit, that he had been arrested and interrogated several times.  He stated that he was arrested and released about 5 times and would not provide detail about such arrests.  The applicant's application stated that he was harrassed at his job and persecuted forcing him to leave his job; however, he provided contradictory testimony stating that although he was taken out of a management position he suffered no loss of pay and was not fired from his job despite his refusal to work in the Chernobyl district.   The applicant stated that he established a taxi business from 1989 to 1990 demonstrating that he chose another profession.  The applicant was able to live in his home in Ternopil and work in the Ukraine without interference during that time.  The applicant's application (see paragraph 32 of his affidavit) indicated that he began planning escape; however, the applicant did not flee the country because he was not being harmed.  The applicant planned a vacation with his wife and obtained sponsorship from his wife's relatives to visit the United States.  He stated that his children remained in the Ukraine.  After a 4 or 5 month visit in the United States, his wife returned to the Ukraine.  Last, the applicant would not address the issue of having a fear of returning to the Ukraine.  The applicant stated that he had started a business in the United States and would not be able to build a life in the Ukraine.

In order to receive asylum, an asylum-seeker must show actual past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion.

For the foregoing reasons, the applicant is not eligible for asylum in the United States and the case is referred to an Immigration Judge pursuant to 8 CFR Section 208.14.

# EXHIBIT 4

(NAR)

HAR
reg 6/11/29

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA  02203-0002

RE:  GRAGOVS VLADIMIR
FILE:  A70-549-407

DATE:  Jun 8, 1998

TO:         MICHAEL G. MOORE
            ATTORNEY AT LAW
            1364 MAIN STREET
            SPRINGFIELD, MA  01103

     Please take notice that the above captioned case has been scheduled for a
MASTER hearing before the Immigration Court on Aug 26, 1998 at  1:00 P.M. at:
                     JFK FEDERAL BLDG., ROOM 320
                     BOSTON, MA  02203-0002
     You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court.  Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative.  If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed.  You can request an
earlier hearing in writing.
     Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions: (1) you may be taken into
custody by the Immigration and Naturalization Service and held for further
action, OR (2) your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act.  An order of removal will be entered
against you if the Immigration and Naturalization Service established by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.
     IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT BOSTON, MA  THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR 33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
     A list of free legal service providers has been given to you.  For
information regarding the status of your case, call toll free 1-800-898-7180
or 703-305-1662.
                      CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL ( )   PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] INS
DATE: _____  BY: COURT STAFF _____  VB
     Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
RVG

# EXHIBIT 5

In the Matter of:

VLADIMIR GRIGOUS

In Deportation Proceedings

A# 70 583 407

June 1, 1998

### Motion to Continue Hearing

The undersigned is the attorney-of-record for the above-named alien. This case is scheduled for Master Calendar hearing on August 5, 1998. The undersigned will be on vacation from July 30th through August 20th on vacation.

WHEREFORE, the undersigned requests that this case be rescheduled to the next following date.

Michael G. Moore

### Certificate of Service

I hereby certify that I have mailed a copy of this Motion to the Assistant District Counsel, INS, on this 1st day of June, 1998 to JFK Building, Boston, Ma 02103.

Michael G. Moore

√ Requested from Hartford
on 3/18/98 for hearing
• Put in Request Book
• Make up my file

# **EXHIBIT 6**

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
JFK FEDERAL BLDG. SUITE 320
BOSTON, MA 02203-0001

In the Matter of                          Case No.   A__-___-___
GREGORY VLADETIC

RESPONDENT                                Docket: BOSTON, MASSACHUSETTS

                                          IN REMOVAL PROCEEDINGS

                    ORDER OF THE IMMIGRATION JUDGE

On Aug 21, 1998  at  1:00 P.M., pursuant to proper notice, the above
entitled matter was scheduled for a hearing before an Immigration Judge for the
purpose of hearing the merits relative to the respondent's request
for relief from removal. However:

( )         the respondent was not present.

( )         the respondent's representative was present, however, the
            respondent was not present.

( )         neither the respondent nor the respondent's representative was
            present.

Therefore, in the absence of any showing of good cause for the respondent's
failure to appear at the hearing concerning the request for relief, I find that
the respondent has abandoned any and all claims for relief from removal.

Wherefore, the issue of removability having been resolved, it is HEREBY ORDERED
for the reasons set forth in the Immigration and Naturalization Service
charging document that the respondent be removed from the United States to
UNITED KINGDOM

                                    LEONARD I. SHAPIRO
                                    Immigration Judge
                                    Date: Aug 21, 1998

Appeal: WAIVED  (A)(I)(R)
Appeal Due By: Sep 20, 1998

                    CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL (M) PERSONAL SERVICE (P)
TO: [ ] ALIEN [ ] ALIEN c/o Custodial Officer [ ] Alien's ATT/REP [ ] DHS
DATE: _____ BY: COURT STAFF _____
    Attachments: [ ] EOIR-33 [ ] EOIR-28 [ ] Legal Services List [ ] Other

Form EOIR 26 - RO (7/94)
RVB

# **EXHIBIT 7**

In the Matter of:

VLADIMIR GRIGOUS                    In Deportation Proceedings

A# 70 583 407                       September 6, 1998

## Motion to Reopen

   On August 26, 1998, the Complainant was ordered removed as neither he
nor his counsel were present for the hearing.

   On that date, counsel for the alien was in Immigration Court in Hartford,
Connecticut, representing **Carlton Whitehorn**, A# 35 973 284 so that he
was unable to attend the hearing in Boston on the instant case.

   In addition, the respondent was ordered removed to the United Kingdom.
Mr. Grigous, through counsel, states that he has never even visited the United
Kingdom. As the I-862 alleges, Mr. Grigous is a citizen of the Ukraine. It
does not mention presence or claim to return to the United Kingdom.

   For these reasons, Mr. Grigous respectfully asks this court to reopen this
case.

                                    _____
                                    Michael G. Moore
                                    Counsel for Alien


## Certificate of Service

   I hereby certify that I have mailed a copy of the foregoing to USINS, Trial
Counsel, JFK Bldg, Boston, Ma 02203, on this 2d day of September, 1998.

                                    _____
                                    Michael G. Moore

# EXHIBIT 8

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

File:    A70 583 407

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Vladimir GRIGOUS, | )    IN DEPORTATION |
| | )    PROCEEDINGS |
| Respondent | ) |

CHARGE:    Section 241(a)(1)(B) of the Immigration and Nationality Act ("the Act")
[8 U.S.C. § 1251(a)(1)(B)] - Remained Longer Than Permitted

APPLICATIONS:    Motion to Reopen

ON BEHALF OF RESPONDENT:
Michael G. Moore, Esq.
1694 Main Street
Springfield, MA 01103

ON BEHALF OF SERVICE:
Asst. District Counsel
Trial Attorney Unit - INS
JFK Federal Bldg., Rm. 425
Boston, Massachusetts 02203

### DECISION OF THE IMMIGRATION JUDGE

On September 24, 1998, the respondent, through counsel, filed a motion to reopen removal proceedings in the above referenced matter. On February 11, 1998, the respondent without cause failed to appear before this Court for his originally scheduled hearing. He was accordingly ordered removed in absentia on that date. On March 6, 1998, the respondent filed a motion to reopen with the Court establishing his failure to appear was due to serious illness. That motion was granted on March 12, 1998. After re-calendering the case, the respondent's counsel requested a continuance for he was to be on vacation on the re-rescheduled hearing date. The Court allowed counsel's motion for continuance and rescheduled the case for August 26, 1998. Both the respondent and his counsel failed to appear for the hearing and the respondent was again ordered removed in his absence. The respondent now asserts that his counsel failed to appear for the respondent's hearing because he was at the Immigration Court in Hartford, Connecticut representing another client. As of the date of this decision, the Immigration and Naturalization Service ("the Service") has not filed a response to the respondent's motion to reopen.

A hearing in absentia is appropriate where the alien had notice of his hearing, had an opportunity to attend, and showed no reasonable cause for his failure to appear. Matter of Patel,

19 I & N Dec. 260 (BIA 1985), aff'd, Patel v. INS, 803 F.2d 804 (5th Cir. 1986); Matter of Marallag, 13 I & N Dec. 775 (BIA 1971).

An in absentia order of deportation may only be rescinded by filing a motion to reopen with the Immigration Judge within 180 days after the date of the order of deportation if the alien demonstrates that his failure to appear was because of exceptional circumstances (as defined in section 240(e)(1) of the Act) or upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien. INA §240(b)(5)(C); Matter of Gonzalez-Lopez, Int. Dec. 3198 (BIA 1993).

The respondent's motion to reopen will be denied. First, the respondent has failed to give any explanation for his failure to appear before this Court as ordered. To the extent that counsel's excuse for his non appearance is justifiable, it does not relieve the respondent of his obligation to appear. Second, the fact that counsel for the respondent did not notify the Boston Immigration Court of the conflict is inexcusable for he was duly notified of the hearing date and had sufficient time to protect the interest of both his clients by requesting permission not to appear from either Court. Counsel's actions are unforgivable especially in light of the fact that counsel had requested and been granted a continuance for the Master Calendar hearing scheduled for August 5, 1998 because of his vacation. Counsel was notified on June 8, 1998 that this case would be reassigned for August 26, 1998 and at no time did he notify this Court that he had a conflict. As counsel's non appearance is not a basis for reopening, and the respondent does not advance any reason for his failure to appear for his hearing, his motion will be denied. The Court notes that the removal order mistakenly provides for the removal of the respondent to the United Kingdom. In light of the error the Court will issue an amended order correcting the country of removal to Ukraine.

Accordingly, the following order shall enter:

ORDER: IT IS ORDERED that the Respondent's Motion to Reopen removal proceedings be, and the same is hereby DENIED.

9/28/98
Date

LEONARD I. SHAPIRO
United States Immigration Judge

A73549854/mtr/ts

# EXHIBIT 9

In the Matter of:

VLADIMIR GRIGOUS                              In Removal Proceedings

A# 70 583 407                                 December 10, 1998

### Alien's Appeal Brief

The alien was ordered removed in absentia and his request for Political Asylum was denied on September 28, 1998. The Motion to Reopen was subsequently denied.

INA Section 240(b)(5)(D) limits judicial review to the validity of the notice provided to the alien, the reasons for not attending and whether the alien is removable. The Act is quite specific that notice of the hearing shall be provided to the alien, not the alien's representative. The Notice of Hearing in this case clearly shows that notice was sent only to the alien's attorney, but not to the alien himself in violation of the Act.

Mr. Grigous does not challenge the finding or removability but seeks relief only for the purposes of obtaining relief therefrom. Thus, the applicable section of the Act that controls is 242B(e)(1). Since in this case the alien speaks Russian ands warnings were not given for his failure to appear in his native language under this Section of the Act. Section 242B(c (3) does not negate the need for oral warnings under 242B(e)(1). Matter of M-S, 21 I&N Dec.___, Interim Dec. No. 3369 (BIA, Oct 30, 1998)

This case meets the standard motion requirements of 8 CFR Sec 3.2(c and 3.22(b)(3), because Respondent has demonstrated sufficient evidence to indicate a reasonable likelihood that his application may succeed on the merits, by the filing of the I-589.

Mr. Grigous has demonstrated a *prima facie* case for asylum. As the Supreme Court held in INS v. Rios-Pineda, 471 U.S. 444(1985), once that has been done a Motion to Reopen **must** be granted unless discretionary reasons not found in this case, apply.