UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

VLADIMIR GRIGOUS,                    :
                                     :
                    Petitioner,      :        CIVIL NO.  3:02CV1440(CFD)
                                     :
        v.                           :
                                     :
JOHN ASHCROFT, ATTORNEY              :
GENERAL, UNITED STATES OF            :
AMERICA,                             :
                                     :
                    Respondent.      :        SEPTEMBER 25, 2003

## **MOTION FOR STAY OF PROCEEDINGS**

### Background

This is a habeas action brought by a non-criminal alien seeking relief from a final order of

deportation. By Ruling dated March 28, 2003, this Court stayed Petitioner's deportation until

further notice from the Court. On April 9, 2003, this Court attempted to hold a conflict hearing

to ascertain whether the petitioner wanted to continue being represented by Attorney Michael

Moore and whether he wished to exercise a fully-informed waiver of any ineffective assistance of

counsel claim concerning Attorney Moore. Unfortunately, the petitioner was not able to fully

participate in the hearing without a Russian interpreter, and the hearing was continued.

The continuation of the conflict hearing is now scheduled for October 2, 2003. Also,

Attorney Moore just filed a motion for change of venue on September 22, 2003. For the reasons

set forth herein, the respondent respectfully requests that the hearing be canceled and all

proceedings be stayed until Attorney Moore's admission in this court is adjudicated or he

withdraws his Appearance.

Disbarment of Attorney Moore

Attorney Moore is admitted to this district court, but has not been a member of the Connecticut bar since approximately 1975, when he resigned in conjunction with grievance and criminal proceedings. His attempt to be reinstated was rejected by the Connecticut state court in approximately 1981. However, it appears that Attorney Moore retained his admission to this court.

In 1994, Attorney Moore was admitted to the bar in Massachusetts. On August 8, 2003, he was disbarred for lying on his bar application. The Memorandum of Decision and Judgment of Disbarment are attached. Moore has sought review by the full panel of the Massachusetts Supreme Judicial Court, but his request for stay was denied and the Judgment of Disbarment is effective.

Thus, Michael Moore, attorney for Petitioner, does not hold a license to practice law from any jurisdiction. He is not under the supervision of nor subject to discipline by any licensing body. Also, proceedings in this case lack finality: any waiver given by Petitioner or any decision rendered by this court would be subject to a later challenge by the petitioner if he wishes to argue that his representation, rendered by a disbarred attorney, was inadequate. It is inappropriate for these proceedings to continue under these circumstances.

It is the understanding of the Office of the U.S. Attorney that Mr. Moore's status to practice in this court will soon be adjudicated pursuant to Rule 83.2(f) of the Local Rules of Civil Procedure in a separate civil proceeding. This case could then resume upon the conclusion of that adjudication. The respondent has no objection to the stay of deportation continuing while this issue is resolved. Respondent assumes that the petitioner is not prejudiced by the delay, as it

- 2 -

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                              SUPREME JUDICIAL COURT
                                          FOR SUFFOLK COUNTY
                                          NO:   SJC-BD-2003-034


IN RE:  MICHAEL G. MOORE

MEMORANDUM OF DECISION

This matter came before me on an information and record of
the proceedings and a vote and memorandum of the Board of Bar
Overseers (board).  Bar counsel initiated the matter by a
petition for discipline alleging that Michael G. Moore, the
respondent, violated S.J.C. Rule Canon 1, DR 1-101 (A)[1] and DR 1-
102(A) (4), (5), and (6),[2] by making misrepresentations on his
Massachusetts bar application and certifying that the answers
were truthful.  The respondent denied that he intended to
deceive, and asserted that the answers he gave on his application
were, literally speaking, correct.  The hearing committee found
that the respondent violated each of the cited disciplinary rules
and recommended that the respondent be disbarred.  The respondent

---

[1] "A lawyer is subject to discipline if he has made a
materially false statement in, or if he has deliberately failed
to disclose a material fact requested in connection with, his
application for admission to the bar."  S.J.C. Rule 3:07, Canon
1, DR 1-101 (A), as appearing in 382 Mass. 769 (1981).

[2] "A lawyer shall not . . . (4) [e]ngage in conduct
involving dishonesty, fraud, deceit, or misrepresentation[;] (5)
[e]ngage in conduct that is prejudicial to the administration of
justice[;] (6) [e]ngage in any other conduct that adversely
reflects on his fitness to practice law."  S.J.C. Rule 3:07,
Canon 1, DR 1-102(A), as appearing in 382 Mass. 769 (1981).

appealed to the board.

An appeal panel of the board adopted the hearing committee's findings of fact and conclusions of law, but modified the suggested disposition, recommending instead an eighteen-month suspension.  Both bar counsel and the respondent filed objections to the appeal panel's report.  A majority of the board adopted the appeal panel's report and its recommendation of an eighteen-month suspension.  Two board members preferred greater (unstated) discipline.  Now, the respondent requests that I revise the findings of the hearing committee to exonerate him or, alternatively, that I impose a one-month or two-month suspension.[3]/  Bar counsel seeks a disbarment order.

1. Facts.  The hearing committee issued extensive findings of fact after an evidentiary hearing at which the respondent and several others testified and numerous exhibits were received in evidence.  I summarize the hearing committee's findings.

The respondent was admitted to the bar of Connecticut in 1975, and was then employed by an attorney in Tolland, Connecticut, who operated a collection agency.  Within six months, that attorney filed formal charges of misconduct against the respondent.  A grievance committee heard evidence that would have supported a finding that the respondent had (1) forged a

---

[3]/ At oral argument, counsel added the alternative of a three-month suspension.

clerk's name on an execution of a nonexistent judgment, (2) held himself out as a court clerk by signing two other "executions," and (3) failed to remit funds to clients. Criminal charges (forgery, larceny, and criminal impersonation) were also filed. The respondent ultimately agreed to resign from the bar; the grievance committee terminated its investigation; and the prosecutor dropped the criminal charges. The respondent sought reinstatement in 1981 but failed to sustain his burden of proving good moral character.√ In particular, the three-judge panel of the Connecticut Superior Court that reviewed the readmission application found that the respondent's testimony in support of readmission "seem[ed] to indicate that he lacks a full appreciation of the fact that the profession of law is a high calling, and of the serious obligations assumed thereby as an officer of the court and as the confidential manager of the affairs and business of others entrusted to his care."

Although he had not been readmitted as an attorney, the respondent nevertheless, in 1982, entered an appearance in a Connecticut court on behalf of a corporation in which he had an

---

√The respondent had resigned under a then-existing Connecticut practice allowing an attorney subject to a pending misconduct charge to resign effective immediately (rather than awaiting the result of the grievance committee's investigation) by waiving the privilege of applying for readmission at any future time. When he sought readmission, the respondent challenged this waiver. A three-judge panel of the Connecticut Superior Court held that the earlier waiver did not bar the application for readmission.

4

interest.   In response, the Connecticut Superior Court entered an
injunction "prohibiting [the respondent] from engaging in the
unauthorized practice of law in the state of Connecticut" and the
respondent was fined $750 for unauthorized practice of law.[5]  The
respondent has never been readmitted to the bar of Connecticut.

In January, 1994, the respondent sought admission to the bar
of Massachusetts.  He passed the Massachusetts bar examination on
his second attempt and was admitted to practice law in
Massachusetts in December, 1994.  His original application and
his supplementary application (filed in June, 1994) required the
respondent to answer certain questions.  He indicated that he had
been admitted to practice in Connecticut and to the United States
District Court for the District of Connecticut.  Because the
answers the respondent provided to certain other questions form
the basis of the present disciplinary proceeding, I discuss them
in some detail.[6]  Both the original and the supplementary
applications required the respondent to certify that each of the
answers he provided "is true, complete, and candid."

Question 10(a):        "Have you ever been disbarred,
                       suspended, reprimanded, censured, or
                       otherwise disciplined or disqualified as

---

[5] The respondent denied that he ever saw the written
injunction, but admitted that he was fined for unauthorized
practice of law.

[6] For simplicity, I quote from the original application.
The respondent gave the same answers to parallel questions on the
second application.

> an attorney, or as a member of any other
> profession, or as a holder of any public
> office?"

A:                      "No."

The hearing committee found that the respondent's answer to
this question was deliberately false, made with the intent to
deceive.  His resignation during disciplinary proceedings, the
denial of readmission, and the injunction were all orders or
actions by which the respondent was "otherwise disciplined or
disqualified as an attorney."

Question 12:    "Have you been a party in any non-criminal
                legal proceeding not covered by Question 11
                other than divorce or separate maintenance?"

A:              "No."

(Question 11 had asked if the respondent, within the past
seven years, had been convicted of conduct deemed to be a felony
in the jurisdiction where judgment was rendered.  In fact, in
1993 the respondent had filed a civil action in the United States
District Court for the District of Connecticut alleging wrongful
termination based on age discrimination against a community
college where he was an adjunct professor.  The college president
responded that the refusal to renew the respondent's contract was
due to problems with the respondent's teaching and two complaints
of sexual harassment lodged against him.  The hearing committee
found that the respondent acted with intent to deceive when he
answered this question.

6

The respondent's position before the hearing committee (and before the board) was that his answers to the questions were responsive to the precise language of the questions and, read literally, accurate. For example, the respondent testified that Question 12 led him back to Question 11; because Question 11 provided a "statute of limitations," and because it sought information concerning criminal cases where he was a defendant, the respondent imported these features to Question 12. Accordingly, he thought that Question 12 sought only information concerning cases in which he was a defendant, not a plaintiff. Thus, pursuant to the respondent's reasoning, the discrimination case need not be listed, because he was a plaintiff, not a defendant. ⁷/ He claimed that he did not have the intent to deceive.

The hearing committee rejected such explanations as "lacking in candor and unworthy of belief," basing this finding on its evaluation of the respondent's testimony and demeanor, as well as its belief that the respondent's answers "demonstrate a consistent pattern of omitting any information which might reveal

---

⁷/ Another example follows. Although he denied ever seeing the 1982 order enjoining him from practicing law in Connecticut (but admitted he was fined $750 for unauthorized practice of law), he opined that the injunction would not have been cause to answer Question 10 differently. This was because, at the time of the injunction, he was not an "attorney" in Connecticut, so the injunction could not have been a "disqualification as an attorney."

his resignation from the Connecticut bar, which might otherwise prove embarrassing to him, or which might induce the [Board of Bar Examiners] to begin an investigation." It found that he had omitted reference to the discrimination suit to prevent the Board of Bar Examiners from learning that charges of sexual harassment had been filed against him.

In addition, the bar application required the respondent to list all employment and any business or profession in which the respondent had engaged since his eighteenth birthday. The respondent listed three periods of employment that appeared to be a complete and continuous list of employment since 1973. He did not list:  (1) his employment as a lawyer at the collection agency in 1975, (2) his service as a lawyer in the Judge Advocate General's Corps of the United States Army in 1976, a position from which he resigned when the Army learned that there was an outstanding warrant for the respondent's arrest in Connecticut (on the charges arising from his employment with the collection agency), (3) his operation of a restaurant in Waterbury, Connecticut, in connection with which he was fined for unauthorized practice of law (and charged with, but acquitted of, arson), or (4) his employment at the community college that gave rise to his discrimination suit (and the allegations against him of sexual harassment).  The hearing committee found that the respondent's answers regarding his employment were "incomplete,

8

deceptive, and adapted to prevent the [Board of Bar Examiners]
from obtaining information embarrassing to the respondent or
which might interfere with his admission to the Massachusetts
Bar."[8]

In sum, the hearing committee determined that the respondent
was simply not credible in denying that he had an intent to
deceive.  "The respondent's efforts to reinterpret and
recharacterize the questions of the bar application in order to
justify his withholding clearly relevant and specifically
requested information only demonstrates his penchant for
mendacity.  The respondent acted deliberately and intentionally
in constructing his answers to the questions . . . ."[9] The
hearing committee concluded that the respondent's answers to
Questions 10(a) and 12, and his false certification that the
answers were truthful, complete, and candid, violated DR 1-101
(A) and DR 1-102 (A) (4), (5), and (6).[10] In aggravation, the

_____

[8] The hearing committee rejected the respondent's
explanations for omitting the community college teaching job,
explanations the hearing committee found conflicting and
inconsistent.

[9] The respondent had testified that he "tussled with these
questions" for some two hours, trying to do "role playing" and
"placing [himself] in the position of the bar examiners" and
asking, "What are they looking for?"  The hearing committee found
that this testimony lacked "any credibility."

[10] The hearing committee found no rule violation in the
respondent's answers to questions regarding bar admissions.
Asked for names of jurisdictions and courts to which he had been
admitted to practice, the respondent listed Connecticut and the

hearing committee found that the respondent "displayed duplicity and a lack of candor before the Hearing Committee.  It is our distinct impression that the respondent has failed to recognize the gravity of his misconduct and take responsibility for it and lied to the Committee."  It recommended that the respondent be disbarred.

    2. <u>Substantial evidence</u>.  The respondent challenges the board's findings that he acted with the intent to deceive.  The disputed findings were made on ample evidence and were based in large part on the credibility determinations of the hearing committee.  The hearing committee was in the best position to make such a determination.  I do not disturb those findings.  See <u>Matter of Abbott</u>, 437 Mass. 384, 394 (2002); <u>Matter of Wise</u>, 433 Mass. 80, 87 (2000).  To the extent that the respondent argues that he should be absolved because he answered in literal compliance with a viable interpretation of the questions, I do not agree.  The respondent certified that his answers were "true, complete, and candid" when, in actuality, they were incomplete and made with intent to deceive.  As the appeal panel noted, the disciplinary rules prohibit more than outright perjury.  They proscribe conduct involving dishonesty, fraud, deceit, or

---

Federal District Court in Connecticut.  The hearing committee concluded that the respondent was not required to provide information as to his resignation from the Connecticut bar in response to these questions, and thus the answers did not violate a disciplinary rule.

misrepresentation, conduct prejudicial to the administration of
justice, and conduct that adversely reflects on the fitness to
practice law.  By deliberately concealing incidents in his past,
with the intent to deceive the Board of Bar Examiners and prevent
them from obtaining information relevant to his moral fitness to
practice law, the respondent violated DR 1-101 and DR 1-102 (A)
(4), (5), and (6).¹²

    3. <u>Appropriate sanction</u>.  All of the above is in accordance
with the findings and conclusions of the three bodies that have
considered this matter: the hearing committee, the appeal panel,
and the board.  Those bodies have not agreed, however, on the
appropriate sanction and, indeed, bar counsel's position has not
been consistent.  Bar counsel originally sought suspension for "a
year and a day," but then sought disbarment as recommended by the
hearing committee.  A divided board recommended a suspension for
eighteen months.  Before me, each party seeks different

_____

    ¹² There is a letter in the record from the Chair of the
Board of Bar Examiners, indicating that changes made to the bar
application, subsequent to the applications that the respondent
completed, were done to "obtain information that the earlier
version . . . did not catch."  Contrary to the respondent's
contention that these changes indicated that the questions had
been unclear, the appeal panel discounted the amendments that the
Board of Bar Examiners made to the applications, concluding that
the questions, as written when the respondent answered them, were
clear enough.  I agree with the appeal panel that the amendments
do not imply that the respondent's misreadings were reasonable.
In any event, the hearing committee specifically found that the
respondent sought to deceive the Board of Bar Examiners by
answering as he did.  Whether, in another case, a respondent can
be forgiven for an honest mistake is another question.

sanctions.

Each bar discipline case must be decided on its own merits,
and each offending attorney must receive the disposition that is
most appropriate in the circumstances.  Matter of Foley, 439
Mass. 324, 333 (2003).  In determining the "appropriate"
sanction, the discipline recommendation of the board is entitled
to "substantial deference."  Id.  Nevertheless, the sanction
imposed must not be "markedly disparate" from the sanction
imposed in similar cases.  Id.  The primary factor in bar
discipline cases is the effect on, and the perception of, the
public and the bar.  Id.  The "appropriate" level of discipline
is that "necessary to protect the public and deter other
attorneys from the same behavior."  Id., quoting Matter of
Concemi, 422 Mass. 326, 329 (1996).  My role therefore is to
examine the nature of the respondent's conduct, the sanction
recommended by the board compared to the sanction imposed in
analogous cases, and any mitigating factors that may be present.

In deciding that disbarment was a sanction "markedly
disparate" from that imposed in analogous cases, the appeal panel
relied on four cases involving misrepresentations on bar
applications, and concluded that the usual sanctions have been
suspensions measured in months rather than years.  In Matter of
Finn, 433 Mass. 418 (2001), the respondent was suspended for
three months where, in connection with his Georgia bar

12

application, he (1) intentionally answered falsely in response to a question regarding student loans, (2) acted with reckless disregard for the truth in response to a question regarding defaulting on loans, and (3) violated other disciplinary rules by engaging in the practice of law in Georgia when he was not admitted there, misrepresenting that he was eligible to practice, distributing a business card with deceptive statements, using stationery with a deceptive letterhead, and failing to maintain proper records of a settlement. In Matter of McGarvey, 15 Mass. Att'y Discipline Rep. 390 (1999), a two-month suspension was ordered where the respondent, also a licensed registered nurse, (1) answered "no" to a question similar to Question 10(a) here, when in reality she had voluntarily surrendered her nursing license in lieu of an administrative hearing and (2) intentionally omitted listing the employment that had given rise to an incident of personal drug use, which, in turn, had resulted in the voluntary surrender of the nursing license. In Matter of Ruzzo, 10 Mass. Att'y Discipline Rep. 233 (1994), the respondent was suspended for one month because he did not disclose that he had applied to practice law in Pennsylvania (in response to a question requiring him to list all jurisdictions where he had applied) and answered "no" to a question like Question 12 here, when in fact he had been a party in proceedings before the Supreme Court of Pennsylvania appealing from the denial of his

13

application.

In <u>Matter of Marshall</u>, BD-2000-059 (Nov. 21, 2000), the
respondent, admitted to practice in Massachusetts, applied for
admission to the Arizona bar. Her application was denied because
the law school she had attended was not accredited by the
American Bar Association and she had not practiced in
Massachusetts for five years. She reapplied, intentionally and
fraudulently misrepresenting her identity as that of another
Massachusetts attorney with a nearly identical name. In support
of this duplicity, she submitted fabricated and fraudulently
procured documents. Her misconduct came to light and, in
addition, the hearing committee found matters in aggravation:
"she had engaged in a pattern of misconduct that reflected
planning and premeditation." She was indefinitely suspended.[12]

The majority of the board and the appeal panel evidently
found this case more severe than <u>Matter of Finn</u>, <u>Matter of
McGarvey</u>, and <u>Matter of Ruzzo</u>, <u>supra</u>, but less severe than <u>Matter</u>

---

[12] At the time of Marshall's misconduct, the Rules of
Professional Conduct, as appearing in 426 Mass. 1303 (1998), were
in effect. She violated Mass. R. Prof. C. 8.1 (a), 426 Mass.
1427 (1998) (knowingly make a false statement of material fact in
connection with bar admission application), 8.4 (c), 426 Mass.
1429 (1998)(engage in conduct involving dishonesty, fraud,
deceit, or misrepresentation), 8.4 (d), 426 Mass. 1429 (1998)
(engage in conduct prejudicial to administration of justice), and
8.4 (h), 426 Mass. 1429 (1998) (engage in conduct that reflects
adversely on fitness to practice law). These rules parallel the
disciplinary rules that the respondent in this case was found to
have violated.

14

of Marshall. The appeal panel stated: "Nothing in the present case suggests the kind of studied and continued dishonesty that would warrant even the indefinite suspension imposed in Marshall, let alone disbarment." I do not agree.

The respondent's history of misconduct and his multiple misrepresentations are facts that distinguish this case from Finn, McGarvey, Ruzzo, supra, and Marshall. He invented wilfully deceptive interpretations of questions that plainly sought precisely the information he wanted to conceal. The respondent's two-hour "tussl[ing]" over the questions shows that his deception was studied and premeditated; he spent that time, not trying to ascertain the meaning of the questions, but trying to avoid answering them forthrightly. Whether an individual is of good moral character and fit to practice law in the Commonwealth is a most serious issue. Questions of this nature are not to be answered by gamesmanship. The respondent's treatment of the questions and his performance before the hearing committee demonstrate that he has retained the traits that marred him in 1981: to paraphrase the three-judge panel of the Connecticut Superior Court, he is deficient in the understanding of the moral duties of his profession. He concealed from the Board of Bar Examiners information that bore directly and obviously on his fitness to practice law. His conduct was a "calculated effort . . . to frustrate any meaningful examination and investigation

15

of [his] fitness to practice law." In re Mitan, 75 Ill. 2d 118, 126, cert. denied, 444 U.S. 916 (1979). He still seeks to rationalize his deceptive answers to the application questions.

Disbarment is the appropriate sanction. The respondent's lack of candor, truthfulness, and completeness would have been cause for the Board of Bar Examiners to recommend denial of his application for admission. See Corliss v. Bar Examiners, 437 Mass. 1023, 1024 (2002); Matter of an Application for Admission to the Bar of the Commonwealth, 431 Mass. 678, 682 (2000). That he obtained admission to the bar by fraud should place him in no better a position. Deception is a characteristic persistent in the respondent. A mere suspension, of any length or even for an indefinite period, is not appropriate. A suspension implies that the respondent's career as an attorney is salvageable. His misrepresentations and outright fabrications, now in two jurisdictions, show that, when given a lesser sanction, he merely repeats the errors of his past. His misconduct was not isolated and regretted, but continuous and unrepented. He does not possess those attributes we expect and demand of members of the bar. Disbarment is appropriate and necessary to deter future misconduct, protect the public, and preserve public confidence in the bar.

Although the respondent offered mitigating evidence, in the form of witnesses attesting to his good character (through

testimony and by affidavit), the appeal panel rejected this as
"typical" and "having little force," citing <u>Matter of Alter</u>, 389
Mass. 153, 156-157 (1983) ("typical" mitigating circumstances
have generally not diverted disbarment or suspension), and the
hearing committee did not mention this mitigating evidence.
**T10:6** Having reviewed that mitigating evidence, I am of opinion
that it is not sufficient to reduce the respondent's culpability.

A judgment shall enter disbarring the respondent from the
practice of law.

By the Court

Judith A. Cowin
Associate Justice

Entered: **August 8, 2003**

**A True Copy**

Date    $8-25-03$

Attest:

Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

RECEIVED

SUFFOLK, SS.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
NO:   BD-2003-034

IN RE: MICHAEL G. MOORE

JUDGMENT OF DISBARMENT

 

This matter came before the Court, Cowin, J., on an
Information and Record of Proceedings with the Vote and
Recommendation filed by the Board on June 12, 2003.  Upon
consideration thereof and for reasons stated in the Memorandum of
Decision of this date, it is ORDERED and ADJUDGED that:

1.     MICHAEL G. MOORE is hereby disbarred from the practice
of law in the Commonwealth of Massachusetts and the lawyer's name
is stricken from the Roll of Attorneys.   In accordance with
S.J.C. Rule 4:01, sec. 17(3), the disbarment shall be effective
thirty days after the date of the entry of this Judgment.   The
lawyer, after the entry of this Judgment, shall not accept any
new retainer or engage as lawyer for another in any new case or
legal matter of any nature.   During the period between the entry
date of this Judgment and its effective date, however, the lawyer
may wind up and complete, on behalf of any client, all matters
which were pending on the entry date.

It is FURTHER ORDERED that:

2.     Within fourteen (14) days of the date of entry of this

3

the absence of counsel, the parties) in pending matters that
the lawyer has been disbarred and, as a consequence, is
disqualified from acting as a lawyer after the effective
date of the disbarment;

   e)    make available to all clients being represented in
pending matters any papers or other property to which they
are entitled, calling attention to any urgency for obtaining
the papers or other property;

   f)    refund any part of any fees paid in advance that
have not been earned; and

   g)    close every IOLTA, client, trust or other
fiduciary account and properly disburse or otherwise
transfer all client and fiduciary funds in his possession,
custody or control.

All notices required by this paragraph shall be served by
certified mail, return receipt requested, in a form approved by
the Board.

   3.    Within twenty-one (21) days after the date of entry of
this Judgment, the lawyer shall file with the Office of the Bar
Counsel an affidavit certifying that the lawyer has fully
complied with the provisions of this Judgment and with bar
disciplinary rules.  Appended to the affidavit of compliance
shall be:

      a)    a copy of each form of notice, the names and
   addresses of the clients, wards, heirs, beneficiaries,
   attorneys, courts and agencies to which notices were sent,

5

notice requirements of S.J.C. Rule 4:01, Section 17.

4.   Within twenty-one (21) days after the entry date of this Judgment, the lawyer shall file with the Clerk of the Supreme Judicial Court for Suffolk County:

a)   a copy of the affidavit of compliance required by paragraph 3 of this Judgment;

b)   a list of all other state, federal and administrative jurisdictions to which the lawyer is admitted to practice; and

c)   the residence or other street address where communications to the lawyer may thereafter be directed.

By the Court (Cowin, J.)

Laura S. Doyle, Clerk

Entered: August 8, 2003

**A True Copy**

_8-25-03_
Date

**Attest:**

Assistant Clerk